## Fernau et al. *versus* Butcher et al.

1. A. issued an attachment against B. under the Act of March 17th, 1869, P. L., 9. B. gave bond with sureties as provided for by section 3 of said Act. On application to the Court by B., after hearing the attachment was dissolved. B. having been personally served, A. prose-

cuted his claim to judgment. An execution having been issued and returned, "*nulla bona,*" A. brought an action of debt on the bond.
    *Held,* that it would not lie, for when the attachment was dissolved the bond fell with it.

2. The intent of the Act of March 17th, 1869, is not to take from an honest debtor his property before judgment rendered against him. If the attachment is dissolved the plaintiff loses all the security which he held thereunder whether by virtue of the attachment alone or by the bond of the defendant and his sureties based thereon.

April 4th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Luzerne county:* Of January Term 1886, No. 286.

This was an action in debt brought by Henry B. Butcher, Howard Butcher, Henry P. Darling and William S. Harvey co-partners, trading as Washington Butcher's Sons against John Fernau, Charles Thomas, F. A. Celiax, Peter Derschuck and Christopher Specht on a bond given by John Fernau and Charles Thomas with the other defendants as sureties under and pursuant to the third section of the Act of March 17th, 1869 relating to attachments.

The case by agreement of parties was referred to L. H. Bennett, Esq., as Referee under the Act of April 6th, 1869 and its supplement.

The Referee reported the following facts:

1. For some time prior to the 10th of March, 1881, John Fernau and Charles Thomas, two of the defendants in this case, were engaged as partners under the firm name of "Fernau & Thomas" in the mercantile business in the borough of Hazleton; On the 7th of July, 1880, one F. A. Celiax recovered a judgment in the Court of Common Pleas of Luzerne county against the said John Fernau for $1100, and on the 16th of September, 1880, he also, in the same court, obtained judgment against the said Charles Thomas for the sum of $137.34. On the 9th and 25th days of February, 1881, respectively, Mr. Celiax issued writs of *fi. fa.* on the above judgments against John Fernau and Charles Thomas, respectively, and thereupon the sheriff, pursuant to these writs, levied upon the respective interests of John Fernau and Charles Thomas in the firm goods of Fernau & Thomas, and on the 9th of March, 1881, at 3 P. M., sold the interest of John Fernau for $165 to Mr. Celiax, and the interest of Charles Thomas for $160 to Cyrus Thomas. And on the 22d of March, 1881, the sheriff settled these writs with the attorney of Mr. Celiax by paying over the amount of the sales less sheriff's fees.

2. Between the 7th and 23d of February, 1881, the firm of Fernau & Thomas bought various bills of merchandise from the

[Fernau et al. *v.* Butcher et al.]

plaintiffs in this suit, who were doing business in the city of
Philadelphia. The balance due on these bills on March 1st,
1881, was $506.74. On the latter date said plaintiffs caused
an affidavit to be filed, setting forth said indebtedness and
that a portion of the same, to wit : $279.73 had been fraudu-
lently contracted, and thereupon on filing and approval of bond
for that purpose, an attachment was issued out of this court,
under the Act 17th March, 1869. for the said sum of $506.74,
at the suit of the present plaintiffs against John Fernau and
Charles Thomas, trading as Fernau & Thomas. On this writ
of attachment the sheriff made return that he "attached, 2d
March, 1881, at 3 o'clock P. M., the interest of John Fernau
and Charles Thomas, in grocery store, general assortment of
goods at store of Fernau & Thomas," &c., &c., (describing
them) and that said goods had already been levied upon on
the writs already mentioned, in favor of Mr. Celiax. Also
that he had attached "all book accounts, bank accounts or
moneys of any and all description that may be, and same day
summoned the defendants and gave to each schedule of prop-
erty attached."

3. On the 10th of March, 1881, Fernau and Thomas filed
their affidavit in the attachment case, stated in the 2d finding,
*supra.* denying that they fraudulently contracted any part of
said debt, and on motion of their attorney, the Court granted
a rule to show cause why the attachment should not be dis-
solved. Depositions were taken in support of the attachment
and against the rule to dissolve. On these depositions and
after argument the Court, on the 25th of April, 1881, by opin-
ion filed, stated that they had examined the conflicting deposi-
tions carefully and were unable to conclude that the goods were
obtained by representations which would raise the presump-
tion of fraud. They therefore dissolved the attachment.

4. On the 10th of March, 1881, Mr. Kisner, the attorney
for the said F. A. Celiax, drew up a bond in the sum of $1,100,
reciting that "whereas Henry Butcher" (and the other plain-
tiffs named in the said attachment as also in this suit) "have
instituted in the Court of Common Pleas of Luzerne county,
an action of attachment under the Act of 1869, against John
Fernau and Charles Thomas, trading as Fernau & Thomas, to
No. 176 April term, 1881, for the sum of $506.74. And
whereas William O'Malley, sheriff of said county, has at-
tached and taken into his possession, by virtue and in pur-
suant of said writ of attachment, the following personal
property," (naming it as in the return to the attachment) and
conditioned as follows : "Now the condition of this obliga-
tion is such that if the said plaintiffs in said attachment
recover judgment. in the same, and if the said Fernau &

Thomas, defendants in said attachment, will pay the debt and costs at the expiration of the stay of execution, on sums of like amount given to freeholders, or surrender up the said property in as good condition as when attached, to any officer having an execution against said party defendants on any judgment rendered in said attachment in favor of the said plaintiffs, then and in such event the said obligation to be void, otherwise to be in full force and virtue." This bond was duly executed by Fernau & Thomas, and F. A. Celiax, Peter Dershuck and Christopher Specht, the several defendants in the present action, and by F. A. Celiax delivered to the sheriff on the day of its date and by the latter deposited in the prothonotary's office on the following 11th day of March, 1881. It was not, however, marked "filed" till 10th June, 1881.

5. On the 16th of May, 1881, attorneys for the attachment plaintiffs, (a statement and copy having been previously duly filed), caused judgment to be entered in that suit for want of affidavit of defence, and on the 10th of June, 1881, they issued a *fi. fa.* upon this judgment, returnable to 1st of September, which writ the sheriff, on August 26th, 1881, returned, — "I hereby certify and return that the within named defendants have no goods or chattels, lands or tenements whereon to levy to make the moneys as within I am commanded." The amount of debt, interest and costs of that judgment at this time is six hundred and sixty-five and twenty-three hundredths dollars.

6. The bond set forth in the 4th finding, *supra*, was known to be in existence both by attorney for Fernau and Thomas, and attorneys for the plaintiffs at the time the latter took depositions in support of the attachment, as also when the rule was argued, and finally on April 25th, 1881, when the attachment was ordered to be dissolved by the Court as stated in the third finding, *supra*, but no allusion was made to said bond, either in the depositions, the arguments, or the opinion of the Court, by whom its existence was not then known.

7. On the 13th of April, 1882, the present action of debt on the bond stated in the fourth finding, *supra*, was brought. This was more than a year after the first day of the term to which the attachment stated in the second finding, *supra*, was made returnable.

The Referee directed judgment to be entered in favor of the plaintiffs for $665.23.

The defendants excepted to the finding of the Referee in favor of the plaintiffs. The Court, RICE, P. J., overruled the exception, confirmed the report and directed judgment to be

[Fernau et al. *v.* Butcher et al.]

entered for the plaintiffs for $665.23, which was accordingly done.

The defendants thereupon took this writ, assigning for error the action of the Court in overruling these exceptions, and in entering said judgment for the plaintiff.

*John Lynch* (*E. A. Lynch* with him), for plaintiffs in error. —1. The giving of the delivery bond by the plaintiffs in error in the attachment suit did not discharge the lien of or dissolve the attachment: Gorbutt *v.* Hauff, 15 Abb. Pr., 189; Bowen *v.* Bouk, 34 How. Pr., 408; Anet *v.* Albo, U. S. Dig. (N. S.), 1 P., 94; Kneedland on Att., 524; Perry *v.* Somberry, 57 Me., 552; Tyler *v.* Safford, 24 Kan., 580: Foster *v.* Sweeny, 14 S. & R., 386.

2. The judgment against Fernau & Thomas in the action upon which the execution issued, was not a judgment in the attachment, that having been dissolved by the Court.

3. The attachment having been dissolved, all the proceedings in attachment become of no effect, and the condition in the delivery bond in this case was not forfeited: Sedgwick's Appeal, 7 W. & S., 263; Hastings *v.* Quigley, 2 Clark, 431; Lanty *v.* Worthington, 4 Barr, 153; Bain *v.* Lyle, 68 Pa. St., 60; Hogan *v.* Lucas, 10 Peters, 400; Rowles *v.* Hoare, 61 Barb., 266; Excelsior Cork Co. *v.* Lukens, 38 Ind., 438; Goss *et al. v.* Williams, 46 Ind., 253; Lehman *v.* Berdin, 6 Rep., 611.

An attachment suit under the statute is the blending of two processes, the one strictly *in rem*, the other *in personam*. The former consists in the levy of the writ upon the property of the debtor. If the defendant is served personally with notice of the suit, it then assumes the form of a personal action. One of these may succeed, the other fail. Holmace *v.* Fisher, 49 Miss., 478–9; Erwin *v.* Heath, 50 Miss., 795, 801.

*George K. Powell* (*F. C. Sturges* with him), for defendants in error.—Attachment proceedings under the Act of 1869 is like the ordinary action of debt, except that in addition to summoning the defendant to appear, the sheriff seizes and takes into his custody certain property to await the result of the suit, and the only effect of the dissolution of the attachment, either by giving bond or in the manner provided by the 6th section of the Act, is to take the property from the grasp of the sheriff, or of the law, and to restore it to the defendant. The dissolution of the attachment does not abate the suit: Sharpless *v.* Zeigler, 11 Norris, 470.

Neither does the sustaining of the attachment prevent the defendant from making a defence upon the merits.

[Fernau et al. *v.* Butcher et al.]

The mere order of the Court, either in sustaining or dissolving the attachment, is not a judgment. It is a mere interlocutory order, and is matter of discretion. It will not be reviewed in the Supreme Court: Wetherald *v.* Shupe, 42 Leg. Int., 426.

The giving of the bond dissolves the attachment: Brenner, Trucks & Co. *v.* Moyer, 2 Out., 278. Where it is said, "But in either event, under the third and fourth section of the Act, it becomes an ordinary personal action, if either there is a personal service of the writ, or, if the defendant is a resident of the county, or appears to the action. In this case the defendants appeared and made defence, after the bond was given to the sheriff for the return of the rafts in the event of recovery.

From that time it is entirely clear that the proceeding became and was a mere personal action against the defendants, with a right to bring an action on the bond taken by the sheriff, if the rafts were not returned according to the condition of the bond: Hildeburn *v.* Watch Co., 7 Phila., 450; Conway *v.* Butcher, 8 Phila., 272; 1 Trickett on Liens, 497; 12 Luzerne Legal Register, 239; Kneeland on Attachments, 463, 545; People *v.* Cameron, 7 Ill., 470; Dierolf *v.* Winterfield, 24 Wis., 143; Haggerty *v.* Morgan, 5 N. Y., 422; Bildersee *v.* Aden, 62 Barb., 175; Garret *v.* Turner, 7 Howard (Miss.) 425.

The legislature never meant that he (the creditor) should give up the certain security of an actual seizure for the doubtful responsibility of the creditor (debtor) and his sureties.

In any event the possession of the property attached would be a sufficient consideration for the bond: Bildersee *v.* Aden, 62 Barb., 175.

The bond was good as a common law obligation, regardless of the statute: Clausen *v.* Shaw, 5 Watts, 468; Koons *v.* Seward, 8 Id., 388; Stroop *v.* Gross, 1 W. & S., 139; Wright *v.* Keys, 15 W. N. C., 75.

A defendant may in all cases apply to the Court to dissolve the attachment, but he may waive that right, as by delay, or by some other proceeding, as in this case, which will be an estoppel: Poor *v.* Colburn, 7 P. F. S., 415; Railroad Co. *v.* Wilcox, 12 Wr., 161; Sheets *v.* Lowenstein, 7 Phila., 361.

Mr. Chief Justice MERCUR delivered the opinion of the Court, October 4th, 1886.

This suit was against the principals and sureties in a bond given under the Act of 17th March, 1869, which provides for the commencement of actions by attachment.

On the 1st of March, 1881, the defendants in error made

[Fernau et al. *v.* Butcher et al.]

and filed an affidavit under that Act setting forth that Fernau
& Thomas (two of the plaintiffs in error) were indebted to
them in the sum of $506.74, and that a portion thereof, to
wit, $279.73, had been fraudulently contracted. They gave
bond and caused an attachment to be issued for the whole
sum against Fernau & Thomas. By virtue thereof the sheriff
attached certain goods, which had already been levied on by
former executions; and also attached some book accounts and
other claims. On the 10th of March the defendants in the
attachment filed their affidavit, denying that they had fraudu-
lently contracted any part of said debt, and obtained a rule to
show cause why the attachment should not be dissolved. On
the hearing thereof the Court thought the fraud averred was
not sufficiently proved, and made the rule absolute on the 25th
April. This action of the Court has never been reversed. It
stands as a conclusive judgment that the attachment was im-
properly issued.

On the aforesaid 10th of March the bond in suit was ex-
ecuted by the defendants in the attachment as principals and
by the other plaintiffs in error as sureties. It recites the at-
tachment suit instituted and the action of the sheriff on the
writ.

It then proceeds to declare: "Now the condition of this
obligation is such that if the plaintiffs in said attachment re-
cover judgment in the same, and if the said Fernau & Thomas,
defendants in said attachment, will pay the debt and costs at
the expiration of the stay of executions on sums of like
amount given to freeholders, or surrender up the said property
in as good condition as when attached, to any officer having
an execution against said party defendant, on any judgment
rendered in said attachment in favor of the said plaintiffs, then
and in such event the said obligation to be void, otherwise to
be in full force and virtue."

The legal arbitrator, by whom the present case was decided,
found as a fact that the existence of this bond was not known
to the Court when it dissolved the attachment.

A personal service of the writ having been made, the dis-
solving of the attachment did not operate as a discontinuance
of the whole suit: Sharpless *v.* Zeigler, 92 Pa. St., 467 ; Biddle
*v.* Black, 99 Id., 380 ; White *v.* Thielens, 106 Id., 173.

Relieved from all the security acquired under and by virtue
of the attachment, the suit, in the words of the statute, shall
proceed "as in a case of summons for debt regularly issued
and duly served." The plaintiffs did proceed and obtain a
judgment against the defendants for the whole amount of
their claim. Failing to collect it, they brought suit on this

bond. The contention now is whether the dissolution of the attachment destroyed the vitality of the bond.

This leads us to consider the design of the Act and the language of the bond.

1. The manifest purpose of the statute was not to supersede the usual forms of action for the recovery of debts. It provides a mode of proceeding only when the debtor has committed, or is about to commit, some fraudulent act. Then and then only does it give a creditor the right to forthwith seize the property of his debtor, and to hold the same as security for the payment of a judgment to be thereafter recovered. Without fraud of the debtor his property cannot be thus seized nor held for the security of the creditor. When seized under the allegation of fraud, its release may be procured either by dissolving the attachment, or by giving security conditioned for the payment of the judgment, which may be recovered "in said attachment" or for the return of the property attached.

Under the view we take of this case it is not necessary to decide now whether an attachment under this Act will lie, when the affidavit charges fraud as applicable to only a part of the debt, for a recovery of which the suit is brought. The writ goes out claiming the whole debt as an entirety. If it can be so used as to obtain possession of property to pay a debt, concerning a large portion of which no fraud is alleged, the whole purpose and spirit of the statute will be perverted.

The intent of the Act is not to take from an unfortunate, but honest debtor, his property, before judgment rendered against him. If the fraud averred is not sufficiently proved, the attachment falls. When it does fall the plaintiff loses all the security which he temporarily held thereunder. Whether that security existed by virtue of the writ of attachment alone or by the superadded bond of the defendant and his sureties based thereon, a dissolution of the attachment strikes down the security. Without fraud of the defendants the plaintiffs were not entitled to demand either form of security. When the attaching power was stricken down, the bond of the defendants fell with it.

2. The language in the condition of the bond strengthens the conclusion at which we have arrived. It is to secure the payment of a judgment to be recovered "in said attachment." It is based on the fact that property is held under the attachment, and assumes that it may legally be so held. It promises to surrender "the property attached" to an officer having an execution against said defendants on any judgment rendered "in said attachment" in favor of said plaintiffs. The judgment, for the payment of which the obligors bound them-

selves, was to be one that should be rendered in and by virtue of the attachment; and not one that might be obtained "as in the case of a summons for debt regularly issued and duly served." That language does not indicate any enlarged right, flowing from the issuing of an attachment and the seizure of property thereunder. On the contrary, it clearly imports a summons in the usual and ordinary form. When the attachment was dissolved the suit was stripped of all the properties and incidents applicable to the attachment.

We think the bond was not intended to cover and does not cover, the case of a judgment recovered on an ordinary summons for debt.

The learned judge therefore erred in confirming the report of the Referee, and in entering judgment in favor of the plaintiffs below.

> Judgment reversed, the report of the Referee set aside, and judgment in favor of the plaintiffs in error.