## NEWPORT COUNTY.

.BENJAMIN EASTON, JUN., *vs.* WILLIAM ORMSBY, *et als.*

A debtor whose chattels had been attached, in order to take them from the custody of the sheriff, gave to him a bond which contained the condition prescribed by Pub. Stat. R. I. cap. 207, § 16, and also that prescribed by Pub. Stat. R. I. cap. 207, § 20; thus making the bond both a bail bond and a delivery bond. Subsequently, but within sixty days, the debtor made an assignment as provided by Pub. Stat. R. I. cap. 237, § 12.

*Held,* that the bond was good as a common law bond.

*Held,* further, that it was invalid as a statutory bond because conforming neither to § 16 nor to § 20 of Pub. Stat. R. I. cap. 207.

*Held,* further, that performance of either of the conditions of the bond would be held a satisfaction of both.

*Held,* further, that the intention and effect of the bond was to dissolve the attachment, as the sheriff accepted the bond and surrendered the chattels.

*Held,* further, that the assignment did not affect the liability of the obligors on the bond.

*Held,* further, that the creditor could enforce the bond although he had accepted a dividend from the assignee.

In Pub. Stat. R. I. cap. 237, § 15, "securities" mean only such securities as create a lien on the debtor's estate.

DEBT on bond. On demurrer to replication.

*Providence, June* 12, 1893. TILLINGHAST, J. The facts disclosed by the pleadings in this case are as follows: On the 21st day of November, 1889, the plaintiff, who was the sheriff of the county of Newport, attached certain goods and chattels of one John C. Atwater of said Newport, upon a

writ of the above named date, wherein Alfred W. Hill of Malden in the State of Massachusetts, was plaintiff, and said John C. Atwater was defendant, which writ was returnable to the Supreme Court to be held at Newport on the 4th Monday in March, 1890.

Subsequent to the making of said attachment, and on the same day, the defendant Atwater tendered to said sheriff a bond, the condition of which is as follows :

"Whereas, the said Benjamin Easton, Jr., is sheriff of the county of Newport in said state of Rhode Island ; and whereas, the above named Benjamin Easton, Jr., as such sheriff, has attached upon a certain writ dated November 21, 1889, wherein Alfred W. Hill of Malden, in the state of Massachusetts, is plaintiff, and John C. Atwater of Newport is defendant, which said writ is returnable to the supreme court to be held at Newport, in the state of Rhode Island, on the fourth Monday of March, A. D. 1890, the following goods and chattels, viz : all and singular the stock of goods found by him at the time of this attachment in the store numbered 286 on Thames street in said city of Newport, consisting of hats, caps, watches, jewelry of different kinds, shirts, underwear, and other articles comprising a first class furnishing goods store, which were set out to the said sheriff by the said plaintiff as the goods and chattels of the said defendant at the time of making such attachment, to wit, on the twenty-first day of November, A. D. 1889, at 7 o'clock and thirty minutes in the afternoon.

"And whereas, after such attachment the said Benjamin Easton, Jr., Sheriff, has, upon tender and delivery to him of this bond, surrendered said goods and chattels so attached as aforesaid to said defendant.

"Now, therefore, if final judgment in the action commenced by said writ shall be forthwith paid and satisfied after the rendition thereof, in case said judgment shall be rendered against the said defendant, then this obligation shall be null and void, otherwise shall be and remain in full force and effect. Now, therefore, if at any time after final judgment shall have been rendered in the action in which

such attachment was made, said goods and chattels shall upon request be in as good order and condition as when. so surrendered, returned to the officer taking this bond, or to any officer who shall be charged with the service of an execution levied or issued upon the judgment rendered in the action commenced by said writ, or if said judgment shall have been paid or shall immediately be paid together with the costs upon such execution, upon the making of such request for the return of said goods and chattels, then this obligation shall be void ; otherwise shall be and remain in full force and effect."

Upon tender and delivery of said bond to said sheriff, he surrendered said goods and chattels so attached as aforesaid to said Atwater, after which the latter proceeded in the regular course of his business to sell therefrom and continued so to do until January 17, 1890, and in so doing disposed of a large portion of said goods and chattels and received, used, spent and disposed of the proceeds of such sales in large part for his personal expenses and convenience. On said January 17, 1890, his then stock in trade was attached by a creditor of his, other than said Hill, whereupon said Atwater made and caused to be recorded in the records of said city of Newport where he resided, an assignment of all his property and estate except so much thereof, other than debts secured by bills of exchange or negotiable promissory notes as was exempt from attachment by statutes of this State or of the United States, to one Henry A. Young, who was then and there a citizen of this State, for the equal benefit of all the creditors of the said John C. Atwater in proportion to their ·respective claims.

None of the proceeds of the sale of said goods by said Atwater, as aforesaid, came to the possession of his assignee. On March 31, 1890, said Alfred W. Hill recovered final judgment in his action against said Atwater in the sum of $379.95 damages and costs taxed at $12.20, and neither said Atwater nor the defendants have ever paid and satisfied said judgment or any part thereof, but have refused so to do. October 27, 1890, said Hill received from said Henry A.

Young, assignee, the sum of $41.04 on account of said damages.

The defendants are sureties on said bond and claim to have been released from their liability thereon in consequence of the said assignment of their principal, said John C. Atwater. Their claim, more fully stated is, that by virtue of said Atwater's assignment, made in accordance with Pub. Stat. R. I. cap. 237, § 12, attachment in the said action of Alfred W. Hill against him was dissolved, and that said bond thereupon became null and void. That the liability of the sheriff towards the plaintiff in an attachment, grows out of the attachment and ends when it is dissolved. Pub. Stat. R. I. cap. 237, § 12, is as follows:

"Whenever the property of any debtor shall be attached or levied upon by any creditor, the debtor may, at any time before such property shall be sold and the proceeds thereof applied to the payment of the claim or judgment upon which such attachment or levy shall have been made, and within sixty days after such attachment or levy, dissolve such attachment or levy by making and having recorded in the records of the town or city where the assignor resides or where any of the real estate of such debtor is located, an assignment of all the property and estate of such debtor, except so much thereof other than debts secured by bills of exchange or negotiable promissory notes as is or shall be exempted from attachment by statute of the state and of the United States, to some citizen of this state, for the equal benefit of all his creditors in proportion to their respective claims, except as is provided in section fourteen of this chapter, and such assignment shall be effectual to convey all the property and estate of such debtor, except as aforesaid, and also all the property and estate theretofore conveyed by such debtor in fraud of the rights of creditors or in violation of the provisions of this chapter."

The first question which logically presents itself for our consideration is this, viz.: What was the effect upon said first attachment, of the giving of said bond? Or, to be more specific, did the giving of said bond dissolve said attachment?

If it did, then there was nothing for said assignment to act upon. But if it did not, then there was, and the making and recording thereof dissolved said attachment. Pub. Stat. R. I. cap. 207, § 16, provides that "The defendant in any writ upon which goods and chattels shall have been attached may, at any time within forty-eight hours, exclusive of Sunday, after such attachment, deliver to such officer a bond in the penal sum of the amount of damages laid in the writ, signed by the defendant or some one in his behalf, with sureties to the satisfaction of such officer, with a condition therein that the same shall be null and void, if the final judgment in the action in which such writ was served shall be forthwith paid and satisfied after the rendition thereof." Section 20 of the same chapter provides that "Every officer having goods and chattels attached by him in his custody shall surrender the same at any time after such attachment and before final judgment to the person whose interest therein has been attached, or from whose possession they have been taken, upon being tendered a bond by the defendant or some one in his behalf with sufficient sureties to the satisfaction of such offficer in double the value of the goods and chattels so attached, or in the penal sum of the amount of damages laid in said writ, with condition that such bond shall be null and void if at any time after final judgment in the action in which such attachment shall have been rendered, such goods and chattels shall upon request therefor be, in as good order and condition as when surrendered, returned to the officer taking such bond, or to any officer who shall be charged with the service· of an execution levied upon the judgment rendered in such action, unless such judgment shall have been paid, or shall be immediately paid, together with the costs upon such execution, upon the making of such request, or the return of such goods and chattels."

The principal difficulty which arises in regard to the solution of the question we have suggested, is that said bond contains two conditions, viz.: *First*, a condition to pay the judgment which shall be recovered in the action, as provided in said section 16 ; and *second*, to return to the officer, upon

request, the goods attached, in as good order and condition as when surrendered, in case final judgment is rendered in favor of the plaintiff, as provided in said section 20. Either one of these conditions, would, of course, have been sufficient. But the obligors, instead of making any election, and giving either a bail bond, as they might have done by inserting the first condition only, or a delivery or forthcoming bond, by inserting the second condition only, have given one containing both of said conditions. That is, strictly speaking, the obligors have bound themselves both to pay the judgment, and also to return the goods. But inasmuch as the conditions in a bond are to be taken most strongly in favor of the obligors, *Pearce* v. *Maguire*, 17 R. I. 61, we think these conditions should be construed as in the alternative, and hence that the bond may be satisfied by the performance of either. In order to better determine the effect of said bond upon the attachment, however, it may be useful first to ascertain whether it is a statutory or a common law bond. We think it must be held to be a common law bond. For, although it contains internal evidence of the intention of the obligors to make it a statutory bond, yet, as it does not conform to either of the provisions aforesaid, but embraces them both, thereby making a condition not contemplated by either, we do not think it can be held to be a statutory bond. Official bonds must conform to the statute by which they are authorized ; and if they do not they are invalid altogether, or valid only as common law bonds. Murfree on Official Bonds, § 41 ; *Adler & Roedelheim* v. *Green*, 18 W. Va. 201. This bond is clearly valid, however, as a common law bond. It violates no statute, and was made upon a valid and lawful consideration. *Central Mills* v. *Stewart*, 133 Mass. 461 ; *Palmer* v. *Vance*, 13 Cal. 553–556 ; *Smith* v. *Fargo*, 57 Cal. 157 ; *Bunneman* v. *Wagner*, 16 Oregon, 433.

Having determined the character and validity of said bond, then, we are next brought to the consideration of the effect thereof. And first, what was the evident purpose of the obligors in giving said bond ? Clearly it was to release the goods from attachment, and thereby enable the owner thereof

to go on with his business. That the obligors so interpreted and understood it is evident from the subsequent conduct of said defendant Atwater, in proceeding to sell and dispose of said goods in the regular course of his business as aforesaid ; and that the sheriff so understood it is also evident from his conduct in immediately surrendering said goods to the said Atwater.

As said by Durfee, C. J., in *Pearce* v. *Maguire, supra,* "There must be many cases in which the purpose of procuring the surrender of the goods, understood on both sides, is that they may be used up or sold so that it will be impossible to return them."

We are forced to the conclusion, therefore, that the giving of said bond, coupled with the conduct of the parties in connection therewith, worked an absolute dissolution of said attachment and that such was the understanding and intention of the parties to said bond. In other words, said bond was given and accepted as a new security and was intended to and did take the place of the attachment lien. The officer was not compelled to surrender the goods on being tendered such a bond, it not being in compliance with the statute as aforesaid ; but by surrendering them, and accepting said bond in lieu thereof as he did, he put it out of his power in any circumstances to compel their return to him, and thereby discharged his attachment thereon. Such surrender of the goods *ipso facto* works a dissolution of the attachment and from that moment reinvests the defendant with the absolute control thereof. See *Pomroy* v. *Kingsley,* 1 Tyler, Vt. 294.

The obligors have not performed either of the conditions contained in said bond, but claim to be discharged therefrom by reason of the fact that the debtor, within sixty days after said attachment, made an assignment as aforesaid which dissolved said attachment, and that thereupon all liability of the said sheriff to the plaintiff in said original action, growing out of said attachment, immediately ceased.

Whatever might have been the effect of said assignment upon the attachment in question, and incidentally also, upon the rights of the obligors in said bond, if it had been given

under the provision of said section 20 of chapter 207, it is clear that it can have no effect in this case, as there being no attachment in existence for it to operate upon, the making thereof had no effect upon the rights of the plaintiff under said bond.

But the defendants further contend that the plaintiff by accepting a dividend from the assignee as aforesaid, has elected to accept of the provisions of said assignment, and hence cannot claim a forfeiture of said bond. Or, to state the claim as it is put in the defendants' brief: "A creditor secured by an assignment of property, voluntarily executed by the debtor, may elect whether he will accept its provisions or will assert his rights, independent of it; but he must accept or reject it as an entirety and cannot accept it in part and repudiate it in part; he cannot claim both under and against it."

The doctrine thus stated, is undoubtedly correct, but we fail to see its applicability to the case at bar.

In *Hatchett* v. *Blanton*, 72 Ala. 423, which the learned counsel cites in support of the proposition aforesaid, the law is clearly stated as follows:

"It cannot be doubted, that when a debtor voluntarily assigns property for the security and benefit of creditors, if the creditors choose to accept the assignment, they must abide by its terms and provisions; they must take it as an entirety; they cannot accept in part, and repudiate in part. Perry on Trusts, § 596; Burrill on Assignments, 3d ed. § 479. The creditor may have rights with which the assignment, so far as it confers rights upon others, is inconsistent. The assignment may derogate from, instead of extending to him the measure of right to which he is entitled. If that be true, he must elect, whether he will accept the assignment, or whether he will reject it, and stand upon the right he may have independent of it. He cannot elect to claim under the assignment the rights given by it, and repudiate it so far as it passes rights to others which are inconsistent with independent, distinct rights to which he may be entitled."

We do not understand that the creditor by pursuing the

obligors on said bond, after having received his *pro ratâ* dividend under said assignment, is thereby claiming both under and against said assignment. That is, he does not thereby seek to ratify it in part and repudiate it in part. By accepting the dividend, from the assignee, the creditor doubtless ratifies the asssignment, and is estopped from subsequently claiming that it is, for any reason, invalid, unless at any rate, he first restores the dividend to the assignee. *Babcock* v. *Dill*, 43 Barb. S. C. 577, 584; Bump on Fraudulent Conveyances, 458, and cases cited in note 4.

But the acceptance of such dividend cannot prevent the creditor from asserting an independent and distinct claim against *others*, the assertion of which in no wise affects the assignment or the other creditors. The bond in suit is not one of the "securities" referred to in section 15 of said chapter 237, nor does it affect or prevent the equal distribution of the estate, which is the main object of the insolvency act. *Market Nat. Bank* v. *Heintzeman*, 15 R. I. 431. As well stated in plaintiff's brief, "Every payment by a debtor to a creditor who has reasonable cause to believe the debtor insolvent, and every security given under like circumstances to such creditor which creates a lien upon the debtor's estate, like a mortgage, for instance, if made within the sixty days before the assignment, are declared void. But a security in the form of a promissory note with an endorser thereon, or a bond with sureties is unaffected by such assignment, inasmuch as the estate of the debtor is not thereby absolutely or conditionally appropriated to a creditor so as to prevent its equal distribution. All that has taken place is that some person or persons have voluntarily become responsible for certain existing obligations of the debtor with the right to be subrogated to all of the rights of the original creditor against the debtor and his estate, in the event of that debtor's failing to satisfy the obligation to such original creditor. No other creditor has been injured by the giving of the note or bond, for the estate of the debtor is as available to him as before the note or bond was given. 'Securities' in section 15 can only refer, therefore, to such security as creates a lien on the

debtor's estate, and by its existence tends to defeat the purpose of the insolvency act." The contention of the defendants that "if the bond stands as a common law bond, on chancerization after judgment, the plaintiff (sheriff,) can show no damages due to himself," is perhaps technically true, yet as he is not suing for himself, but as trustee for the attaching creditor, he is clearly entitled to recover such damages as said creditor has sustained.

The defendants' demurrer to the plaintiff's replication is overruled.

*Darius Baker*, for plaintiff.

*Samuel R. Honey*, for defendants.