GUSTAVUS A. SCHULTZ *vs.* HENRY A. GRIMWOOD *et al.*

PROVIDENCE—APRIL 12, 1905.

PRESENT: Dubois and Blodgett, JJ.

(1) *Attachment. Right of surety on Bond to Release Attachment. Replevin.*

The surety in a common-law bond given to release an attachment of goods and chattels has no such right of property or possession in the goods and chattels as will enable him to maintain replevin against the vendee of his principal.

REPLEVIN. Heard on demurrer to replication, and de-murrer sustained.

DUBOIS, J. This is an action of replevin.

The defendants plead, first, the general issue; and, secondly, property in a third person.

To the second plea the plaintiff replied, setting out a special title in himself to the goods and chattels replevied, acquired from one Edward O. Thurston, former owner and possessor thereof, in manner following: after attachment of the goods and chattels at the suit of a creditor of Thurston, the plaintiff became surety for him, at his request, upon a bond to dissolve the attachment, with condition to return them, after final judgment in the action, or pay the judgment; that in con-sideration of his signing the bond as aforesaid, Thurston and the plaintiff agreed that in case judgment should be rendered against Thurston he would forthwith return the goods attached and released by the bond to the deputy of the sheriff, and that upon his failure to do so, the plaintiff might take possession of the same to so return them; that afterwards judgment in the suit was rendered against Thurston and execution was issued thereon and placed for service with the deputy sheriff who made demand upon Thurston for payment of said judgment, which, being refused, he demanded of Thurston a return of the property attached, which was also refused; that the sheriff then demanded the goods and chattels of the plaintiff, and he demanded them of Thurston for the purpose of returning them to the deputy sheriff in discharge of himself as surety on the bond, but Thurston refused to surrender the same to him. And the plaintiff avers that the property attached was in the possession of the defendants and that he demanded from them possession of the goods for the purpose of returning them to the deputy sheriff, which demand was refused by the de-fendants, whereupon he brought this suit.

And the plaintiff avers that the defendants and Thurston had conspired to keep the property beyond the reach of the plaintiff to prevent his returning the same to the sheriff, with-out this that said goods and chattels were the property of the

H. A. Grimwood Company and not the property of the plaintiff.

To this replication the defendants have demurred for six reasons, of which only the first two are substantial, viz.: first, "That said replication avers and shows no such general or special property or right to possession in or to the chattels replevied as to entitle him to maintain his said action against the defendants." And, secondly, "That for aught that appears by said replication and the record, said H. A. Grimwood Company had the general property and title and right to possession of the chattels replevied as averred in the defendants' plea thereof."

(1)    The following question arises out of the pleadings: Has the surety in a bond, given to release an attachment of goods and chattels, by virtue of such suretyship alone, any property in or right of possession to such goods and chattels which he can enforce by replevin against the vendee of his principal in the bond? It is stated by the parties, and we therefore assume that the bond upon which the plaintiff is surety, like the bond referred to in *Easton* v. *Ormsby*, 18 R. I. 309, is a common-law bond, and governed by that case. "The officer was not compelled to surrender the goods on being tendered such a bond, it not being in compliance with the statute; but by surrendering them, and accepting said bond in lieu thereof as he did, he put it out of his power in any circumstances to compel their return to him, and thereby discharged his attachment thereon. Such surrender of the goods *ipso facto* works a dissolution of the attachment and from that moment re-invests the defendant with the absolute control thereof." *Ibid.* p. 315. Thurston, being thus vested with the absolute control of the goods, could dispose of them at his pleasure: his legal right to do so was not affected by his oral agreement to return the goods or permit the plaintiff to do so in case of final judgment against him. These were mere promises, for the breach of which an action might lie; but which did not in any way confer title or right of possession in the plaintiff as against a third person not a party to such agreement. Neither is the legal title in the goods affected by the alleged conspiracy. This is not an equitable

proceeding brought to set aside the conveyance upon the ground of fraud. The plaintiff argues that his rights are similar to those of a receiptor of goods, and cites cases in which a receiptor has been allowed to maintain trover, trespass, and replevin. But the plaintiff in the circumstances set out in the pleadings can not be deemed to be a receiptor.

"In quite a number of states and by long practice, it has become a well-established law that the officer may give the immediate custody of the property attached into the hands of some responsible person and take his receipt therefor, conditioned that the property will be returned on demand, or within a certain time after the rendition of judgment, or the like. Such bailee of the officer is usually termed the receiptor or keeper, and what is hereinafter said concerning him should not be confounded with the duties or liabilities of a custodian or keeper in other states where such custodian or keeper is the immediate servant of the officer, and holds as the officer himself without a receipt. Nor is the law concerning receiptors in confusion with special statutes of other states which provide for the retaining of the possession of the property by the debtor upon the giving of a forthcoming bond." Shinn on Attachment and Garnishment, § 264.

"In many states where no practice has been established of receipting for the property in the manner hereinbefore shown, special statutes have provided a means whereby a debtor, whose property has been seized by attachment, may at any time before final judgment, give a bond with sufficient surety, conditioned as required by such statute, and have the possession of his property surrendered to him. It will be noticed that while the practice of receipting is founded wholly upon custom, the law, regarding bonds for the return of property attached, is wholly statutory, and that while the effect of the former is to continue the liability of the officer for the safe keeping of the property, the effect of the latter is to fix such responsibility upon the parties, principal, and sureties, to the bond.

"The provisions and practice regarding bonds are far from uniform, but in general there are two kinds of bonds to procure

the release of property from the possession of the attaching officer.    One kind contains the principal condition, that if judgment in the attachment suit be rendered against the defendant the property shall be forthcoming to satisfy the execution on such judgment;  otherwise that the sureties will be bounden to the extent, in same instances of the value of the property, and in other instances to the amount of the indebtedness.    These bonds are variously called 'bail bonds,' 'forthcoming bonds,' and 'delivery bonds.'   Such bonds, of course, only release the property from the custody of the officer and do not release it from the lien of the attachment.    Another class of bonds contains the principal condition that the defendant in the attachment suit will 'perform whatever judgment may be entered against him,' in such attachment suit, and in default thereof, and, in the event that judgment is entered against such defendant, that the sureties will pay the amount thereof.    A bond of this class not only releases the officer from further liability as to the care and custody of the property, but also releases the property itself from the lien of such attachment;  working an entire dissolution of the attachment so far as the property is concerned and thereafter the bond itself is held as a substitute of the *res*."    *Ibid*, § 286.

This State is not one of those in which such practice prevails, but is one where a bond is provided for by statute.   Gen. Laws R. I. cap. 253, §§ 14 and 18.

The demurrer, therefore, must be sustained, and, as this is decisive of the plaintiff's right to recover, the case is remitted to the Common Pleas Division with direction to enter judgment for the defendant.

*George T. Brown and Irving Champlin*, for plaintiff.
*George H. Huddy, Jr.*, for defendant.