CHARLES E. SCHUNACK *vs.* THE ART METAL NOVELTY
COMPANY.

Third Judicial District, Bridgeport, April Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The plaintiff began his action by summons and attachment. By
the voluntary action of the parties, a bond in common-law form,
with the defendant as principal and a surety company as surety,
was given to the plaintiff in substitution for the attachment, the
attachment released, and the attached property returned to the
defendant. The bond bound its obligors to pay any judgment
which the plaintiff might recover, not exceeding $1,000, in the
event that the defendant failed to satisfy it. Later, and within
four months of the commencement of the action, the defendant
was adjudged a bankrupt, and subsequently it obtained its dis-
charge. Thereupon it withdrew its answer, filed before bank-
ruptcy proceedings were begun, and pleaded said adjudication
and discharge. The plaintiff waived his claim to a general judg-
ment, but asked that a special or limited one be rendered in aid of
proceedings upon the bond against the surety. *Held:*—

1. That the bond was not invalidated by the adjudication in bank-
   ruptcy.
2. That the discharge did not prevent the rendition of a special or
   limited judgment.
3. That such a judgment would suffice to bring into existence the event
   upon the happening of which the surety's liability was dependent.
4. That the plaintiff was not entitled to such a judgment as a matter
   of course.
5. That such judgments would be rendered only where it appeared
   that their rendition was called for as a means to an end which the
   plaintiff was in justice and equity entitled to reach.
6. That the plaintiff was not entitled to such a judgment for the pur-
   pose of bringing into existence a legal right against the surety,
   when no right of any sort already existed, and thus creating a
   basis for an action against it.
7. That the defendant's conduct pending the action, relied upon as
   estopping it from pleading its adjudication and discharge in bank-
   ruptcy, was not sufficient to that end, and especially so as the
   surety was not a party thereto.

Argued April 12th—decided June 15th, 1911.

ACTION to recover for goods sold and delivered,

brought to the City Court of Meriden and thence by
appeal of the plaintiff to the Superior Court in New
Haven County, where the parties were at issue as to the
effect upon the plaintiff's claim of an adjudication and
discharge in bankruptcy pleaded by the defendant; the
court, *Reed, J.*, upheld the plea and rendered judgment
for the defendant, from which the plaintiff appealed.
*No error.*

The plaintiff brought his action upon the common
counts with a bill of particulars. The defendant, after
withdrawing a former answer, pleaded an adjudication
and subsequent discharge in bankruptcy upon proceed-
ings commenced about two and one half months after
the action was brought. The plaintiff in his reply ad-
mitted the allegations of the answer, and further al-
leged that when the action was begun an attachment
of personal estate of the defendant was made pursuant
to the writ; that two days later, while the property was
in the custody of the attaching officer, the defendant,
through its attorney, offered to the plaintiff, through
his attorney, to execute and deliver to the plaintiff a
surety bond in consideration of the release of the attach-
ment; that this offer was accepted; that the defendant,
as principal, and the American Surety Company, as
surety, thereupon executed such bond, which the de-
fendant delivered to the plaintiff to his satisfaction;
that the plaintiff then released said attachment, and
caused the attached property to be delivered back to the
defendant by the officer; that this bond was now held by
the plaintiff, and that no part thereof had been paid. It
was alleged that all this took place before the proceed-
ings in bankruptcy were begun.

The bond, which was incorporated in the reply, was
in the ordinary form of a common bond for the penal
sum of $1,000. The condition recited the pendency of
the action and the attachment made therein, and then

proceeded as follows: "Now therefore, if the said The Art Metal Novelty Company shall pay any judgment that may be recovered against it in said action, not exceeding the amount of one thousand ($1,000) dollars; or in default of said payment, shall pay to the officer having the execution issued on said judgment on demand, said judgment, not exceeding the amount of one thousand ($1,000) dollars, then this bond shall be void; but otherwise, in full force and effect."

The reply further alleged, by way of estoppel, that about two months after the action was begun, and while the defendant was in default of answer, the defendant stated to the plaintiff that it had a good defense, and desired to plead it; that thereupon, with the plaintiff's written consent, an answer containing a defense and counterclaim was filed; that three days after the defendant's discharge this answer was withdrawn, and that recited substituted; and that by reason of the filing of said original answer the plaintiff was hindered and prevented from taking judgment in his action.

The plaintiff in his reply stated that he claimed a judgment limited to and for the purpose of proceedings against said surety, and such judgment only.

A demurrer to this reply was sustained, and judgment for the defendant rendered.

*George A. Clark*, for the appellant (plaintiff).

*William C. Mueller*, for the appellee (defendant).

PRENTICE, J. This action was begun by attachment within four months prior to the commencement of bankruptcy proceedings, wherein the defendant was adjudicated a bankrupt and granted a discharge. Before these proceedings were begun, the attachment was released by the giving of a bond to the plaintiff in which the defendant was principal and a surety company the

surety. This bond obligated the surety to pay any judgment, not exceeding $1,000, which the plaintiff might recover and the defendant not pay. Judgment is now sought, as the pleadings disclose, as a necessary step in an attempt to reach the surety. By reason of the defendant's discharge, a general judgment against him cannot be rendered. Recognizing this fact, only a special or limited one is asked. Except as a means to the end indicated, such a judgment would be of no avail, and the plaintiff's prayer for it one which would have no claim upon the attention of the court. A determination of the plaintiff's right to the judgment, therefore, involves an inquiry as to the plaintiff's rights under the bond and with special reference to the liability of the surety.

A bond given to release property from attachment may, according to its tenor or the circumstances, be one which in legal contemplation takes the place of the attachment lien, or one which is substituted for the property attached. *Perry* v. *Post*, 45 Conn. 354, 357. In the one case the attachment lien no longer exists; while in the other it does, and the bond is subject to its influence. "Forthcoming" or "delivery" bonds are, for obvious reasons, held to belong to the latter class. *Schultz* v. *Grimwood*, 27 R. I. 137, 141, 60 Atl. 1065; *Woodman* v. *Trafton*, 7 Me. 178, 179; *Hilton* v. *Ross*, 9 Neb. 406, 410, 2 N. W. 862. In *Perry* v. *Post*, 45 Conn. 354, 357, we held that our statutory bond, given pursuant to the statute, also belongs to this class. The bond in that case, it will be observed, did not obligate the surety to pay the judgment, not exceeding a specified amount, in the event of the defendant's failure to do so, but to pay to the officer upon execution the actual value of the defendant's interest in the attached property at the time of the attachment, not exceeding the amount of the recognizance. General Statutes, § 853.

The legal consequence in situations of the latter sort, of the dissolution of the attachment as affecting liability upon the bond, is apparent. As the lien of the attachment remains in legal contemplation over the property through the bond, or over the bond as representing the property, it follows naturally that whatever destroys the attachment destroys all liability upon the bond.

The prescribed statutory attachment bond in some jurisdictions is, however, of a quite different tenor. Its terms are not in substance unlike the terms of the instrument before us, in that the surety obligates himself to pay the judgment, not exceeding a stipulated amount. The question of the character and status of such instruments has been under review in the jurisdictions where they are prescribed. A study of this question as related to bankruptcy proceedings in the various phases which may be presented, involves the consideration of the operation of two wholly independent sets of bankruptcy provisions, to wit, those contained in § 67f, which prescribe the effect of an adjudication in bankruptcy upon outstanding attachments, liens, etc., and those of later sections, which ordain what the consequences of a discharge shall be. It is unfortunate that there has not always been a clear appreciation of this fact, and that unnecessary confusion has for that reason crept into some of the statements found in the books.

The cases which deal with statutory bonds of the form last referred to, from the standpoint of § 67f, are few. Such reasoning as they contain is by no means harmonious or satisfactory, and the conclusions are not uniform. In New York it has been held that the fact that the attachment, if it had continued, would have been dissolved by the adjudication, did not affect the bond. *McCombs* v. *Allen*, 82 N. Y. 114; *King* v. *Block Amusement Co.*, 126 N. Y. App. Div. 48, 111 N. Y. Supp. 102, 193 N. Y. 608, 86 N. E. 1126. In *Crook*

*Horner Co.* v. *Gilpin*, 112 Md. 1, 75 Atl. 1049, the contrary conclusion was reached, and in *Blount* v. *American L. & B. Co.*, 161 Fed. Rep. 714, a decidedly *obiter* statement to the same effect was made. This conflict of conclusion is doubtless explainable upon the basis of a difference of view as to the status of the bond as related to the attachment. In New York the attachment is regarded as not only nonexistent, after the adjudication in bankruptcy, but as being an event of the past possessing no manner of significance in the present. The Maryland court, on the contrary, discovers such a relation between the bond and the attachment by virtue of the office of the former under the statute, and of its compulsory substitution for the attachment by the operation of the machinery of the law, set in motion as a statutory incident of the attachment, as to entitle the bond to be regarded in the eye of the law as dependent for its life and efficiency upon the continuance of the attachment. In other words, a situation is recognized in which the bond is accorded a position not unlike, in substance, that which our statutory bond occupies under our decisions. See also *Fernau* v. *Butcher*, 113 Pa. St. 292, 6 Atl. 67; *Carpenter* v. *Turrell*, 100 Mass. 450.

We have no occasion to inquire upon which side of this contention lies the better reason. It is enough to observe that no reason appears for questioning the New York conclusion, or for accepting the contrary view, except one which is drawn from some relation between the attachment and the bond, as its statutory substitute, such as we have indicated above, and to note that we are not here dealing with a statutory bond; were we, the opinion in *Perry* v. *Post*, 45 Conn. 354, would narrow greatly the scope of our inquiry. The tenor of the present instrument is very different from that of the statutory form. It was given and accepted by mutual agreement of the parties. It was not imposed upon the

plaintiff through the operation of legal proceedings. Its tender did not compel the surrender of the property attached. In the present case the plaintiff conducted the negotiations, and made the agreement which resulted in the acceptance of the bond, the release of the attachment, and the surrender of the property. The officer acted under his direction. What each did was of his own free will. As the result of their voluntary action, they not only put it out of their power to compel a return of the property, and thereby discharged the attachment, but they expressly undertook to and did formally discharge it, and put the property back into the defendant's hands free of lien. From this time on the attachment disappeared from the scene, and the bond was held as the only security for the satisfaction of a judgment. Between the attachment, which thus came to an end, and the bond which came into existence, there was no other connection than that the release of the attachment furnished the consideration for the delivery of the bond. It occupied as independent a position as if there had been no attachment, and it must stand or fall upon its own merits. *Easton* v. *Ormsby*, 18 R. I. 309, 27 Atl. 216. Any immunity which the surety may enjoy does not, therefore, arise from the provisions of § 67f. It can only come as a consequence of the defendant's discharge.

Although the terms of the instrument are not in conformity with those of the statutory form, it was a valid common-law bond. *Easton* v. *Ormsby*, 18 R. I. 309, 27 Atl. 216; *Central Mills Co.* v. *Stewart*, 133 Mass. 461. By its terms the rendition of a judgment against the defendant in the action was made a condition precedent to any liability on the part of the surety. The defendant's discharge in bankruptcy prevents a general judgment, and to that extent prevents the happening of the event upon which the surety's liability is made to de-

pend. *Wolf* v. *Stix*, 99 U. S. 1. In those jurisdictions in which the power of the courts to render a special judgment is denied, as it is or has been in certain States, the result of this situation inevitably is that liability on the part of the surety can never arise, and that he is practically released from the obligation assumed by him. *Hamilton* v. *Bryant*, 114 Mass. 543; *Goyer Co.* v. *Jones*, 79 Miss. 253, 256, 30 So. 651; *Klipstein & Co.* v. *Allen-Miles Co.*, 136 Fed. Rep. 385, 390. The decisions which have announced this conclusion, however, have no pertinence in jurisdictions where special judgments may be rendered, save as they indicate by necessary inference that in the absence of a special judgment the surety occupies a position of immunity from liability.

*Hill* v. *Harding*, 130 U. S. 699, 9 Sup. Ct. Rep. 725, furnishes conclusive authority for the proposition that the defendant's discharge affords no obstacle to the rendition of a special judgment against him, and that such judgment, although unenforcible against him or his property, would suffice to bring about the happening of the event upon the occurrence of which the surety's liability depends. The power to render such judgments is conferred by statute in some States, as in Massachusetts, since the opinion in the case hereinbefore referred to was delivered. In others the power is recognized as existing in the courts, in the absence of a statute distinctly conferring it. Massachusetts Acts and Resolves, 1875, Chap. 68; *Hill* v. *Harding*, 116 Ill. 92, 4 N. E. 361; *Kendrick & Roberts* v. *Warren Brothers*, 110 Md. 47, 72 Atl. 461; *U. S. Wind Engine & Power Co.* v. *North Penn Iron Co.*, 227 Pa. St. 262, 75 Atl. 1094. In Connecticut the right of courts to render special or qualified judgments, similar in general character to that here sought, has long been exercised, and their right to render such judgments under the precise conditions

here presented has been twice recognized by this court. *Daggett* v. *Cook*, 37 Conn. 341, 345; *Wakeman* v. *Throckmorton*, 74 Conn. 616, 619, 51 Atl. 554. The question presented thus becomes reduced to the single inquiry, whether or not, upon the facts appearing of record, the plaintiff has shown himself entitled to have a special judgment, which, under the present circumstances would, as usually given, be a judgment with a perpetual stay of execution against the defendant and his property and estate.

A special judgment is not rendered, as a matter of course, whenever a general judgment is impossible. Ordinarily such judgment would be of no avail, and a meaningless form. There may be situations, however, in which it becomes an indispensable means to an end which the plaintiff is in justice and right entitled to reach. He may have a legal right which he can enforce only through the medium of such a judgment; he may have some security for what is his due of which he cannot avail himself without its aid as a part of the remedial process; or he may have some equity which will be lost to him, if the judgment is denied him. It is in such cases as these, where otherwise the ends of justice cannot be met, rights acquired preserved, or equities protected, that a court will render a special judgment. *Hill* v. *Harding*, 130 U. S. 699, 9 Sup. Ct. Rep. 725; *House* v. *Schnadig*, 138 Ill. App. 499; *Kendrick & Roberts* v. *Warren Brothers*, 110 Md. 47, 72 Atl. 461; *U. S. Wind Engine & Power Co.* v. *North Penn Iron Co.*, 227 Pa. St. 262, 75 Atl. 1094.

Under circumstances where there has been an adjudication in bankruptcy of a defendant, in proceedings begun more than four months after attachment made, the creditor has by his attachment acquired as security for his claim sued upon a lien upon the property attached, which neither the adjudication nor any of the

proceedings in bankruptcy disturbs. The defendant's discharge does not disturb it. It does, however, by precluding a general judgment against the debtor, prevent the creditor from pursuing the usual course to avail himself of this security. The creditor finds himself in the position where, having obtained security by his diligence, the door to reach it is closed to him, unless some form of judgment, not forbidden, can be rendered. His predicament furnishes to those courts which can render a qualified judgment the moving reason for doing so, in order that injustice may thus be avoided, and the creditor be enabled to avail himself of the security which is rightfully his, and of the benefit of which he would otherwise be deprived.

Where a bond has been given in substitution for either the property attached or the attachment, in such a case the same appeal for a special judgment is made, in order that the creditor may obtain the benefit of that to which he has become rightfully entitled, or to preserve his plain equity.

Where the bankruptcy proceedings are begun within four months after the attachment, and there is substituted for the attachment a bond which, as in the present case, does not become ineffective by the mere operation of the provisions of § 67f of the Bankrupt Act, the situation is a very different one. The plaintiff has nothing for the security or satisfaction of his claim, except the bond and such legal obligation as its terms embody. This obligation gives no present legal right. The event whose happening would bring one into existence has not occurred. He stands before the court as one without security to appropriate, or legal right to enforce. What he asks is its assistance in bringing into existence such right, to be later enforced. This assistance the court will not render, unless the plaintiff can show some sufficient reason therefor which is

founded in right and equity. Such reasons to such an end the situation indicated does not itself present.

The reply sets up that none of the property or assets of the defendant were given or pledged to the surety as security for its liability incurred by the giving of the bond. In our discussion and conclusion this has been assumed, and the plaintiff given full benefit of it.

The reply recites certain facts as having taken place while the cause was pending in court prior to the proceedings in bankruptcy, as estopping the defendant from pleading his discharge. The plaintiff presents to us no claim based upon these allegations. It is apparent that they are not sufficient to establish an estoppel. If they could be used for the purpose of disclosing an equitable reason for the rendition of a special judgment, in order that the surety, who was not a party to what is therein set out, might be made liable upon the bond, they would fall short of being sufficient for that purpose.

There is no error.

In this opinion the other judges concurred.