# CASES DETERMINED

### IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

AT THE JUNE TERM THEREOF HELD AT WHEELING, IN THE COUNTY OF
OHIO, COMMENCING ON THE 1st DAY OF JUNE, 1881, AND
ENDING ON THE 1st DAY OF JULY, 1881.

## ADLER & ROEDELHEIM v. GREEN et al.

Decided June 25, 1881.

1. A sheriff's or other officer's return upon a forthcoming bond is not conclusive, but only *prima facie* evidence of its truth.

2. A sheriff or other officer levying a writ of *fieri facias* takes a forthcoming bond, and the property therein named is delivered up on the day of sale, but for the want of bidders is not sold, he can take another forthcoming bond under the statute.

3. A sheriff or other officer, who takes a second forthcoming bond for the property included in the first bond, is estopped from denying, that the property was delivered in performance of the condition of the first bond

4. A forthcoming bond, which provides for the delivery of the property on a day different from the day of sale fixed in the bond, is not a good statutory bond; and the sheriff's, or other officer's return of "forfeited," on such bond is not even *prima facie* evidence of the truth thereof.

5. Such a bond, though not good as a statutory bond, is good as a common aw bond, if there is no other objection to it.

26

6. If a forthcoming bond fixes a day of sale different from the day of delivery named in the bond, and on the day fixed for the delivery the execution debtor goes to the sheriff or other officer and informs him, that the property is at the place of sale, and he does not go there to receive it, and the property is there in fact and ready to be delivered to the officer, this is a satisfaction of the condition of the bond, and there can be no recovery on it.

7. On the day of sale the property is at the place of sale and consisting principally of household-furniture and ornaments in different 'rooms of the house, and the officer goes through those rooms, has the property in his presence and power, and the execution-debtor does not interfere or prevent a sale of the property; this is such a delivery of the property, as discharges the obligors in the bond from responsibility, notwithstanding the fact that the execution-debtor may claim, that a portion of the property is exempt from forced sale under the exemption-laws, and third parties may claim a portion of it as their property.

Writ of error and *supersedeas* to a judgment of the municipal court of Wheeling, rendered on the 26th day of September, 1880, in an action at law in said Court then pending, wherein J. Adler and S. Roedelheim were plaintiffs, and Joseph Green, George G. Roth and L. Wilhelm were defendants, allowed upon the petition of said defendants.

Hon. G. L. Cranmer, judge of the municipal court of Wheeling, rendered the judgment complained of.

PATTON, JUDGE, furnishes the following statement of the case :

A writ of *fieri facias* in favor of Adler & Roedelheim against Joseph Green, was levied by the city sergeant of of Wheeling upon a number of small articles. Green together with George G. Roth and L. Wilhelm, his sureties, gave a bond for the forthcoming of the property on the 9th day of August, 1879. On that day the property was not sold, but another bond was given for the forthcoming of the property on the 18th day of August, 1879, but fixing upon the 19th day of August for the sale. On the 18th day of August Joseph Green informed the sergeant, that the property was at the place of sale, and was told by the sergeant, that the following day, the 19th, was the day of sale. On that day the sergeant went upon the premises, 1147 Market street, the place fixed upon for the sale, and sold a portion of it, but did not sell all

of it, although all of it was there present.   On the 25th of August the sergeant made the following endorsement upon the first of said bonds:

"On the 9th day of August, 1879, the within named Joseph Green delivered up for sale the following named articles, being a portion of those mentioned in the within named bond * * * * * * and at the same time filed with me the exemption papers, herewith filed as a part of this return and exhibit 1, and refused to deliver up for sale the articles therein claimed as exempt, viz:   * * * * * * *   part of the property named in the within bond, and also refused to deliver up for sale certain other of the within named articles, viz:   * * * * * * *   , as to which articles, so refused to be delivered up as aforesaid, the within bond is returned forfeited, the articles delivered up as above stated were afterwards sold for $88.49, which sum has been credited on the within named execution."

On the second bond the sergeant made the following endorsement, to-wit: "On the 19th day of August, 1879, the within named Joseph Green delivered up for sale the following of the within named articles, which had previously been delivered up under a forthcoming bond theretofore taken in this suit, and afterwards retained under the within bond, viz:  * * * * *  , and then and there refused to deliver up for sale the articles claimed as exempt in exemption-papers made part of the return on said former bond, to which reference is made, the same being part of the within named property, and also then refused to deliver for sale certain other of the within named articles, viz:   * * * * *   , as to all of which articles so refused to be delivered up the within named bond is returned forfeited ; the articles delivered up as aforesaid were sold for $88.49."

Between the 6th and 9th of August Joseph Green had made out a list of all his personal property in accordance with the provisions of the statute, verified as the law directs, as the basis for his claim of exemption from forced sale of $200.00 worth of property, and in writing notified the sergeant, that he claimed the property in the list mentioned as exempt from forced sale.   On the day of sale Fritz Yarling, ―― Yarling, John Franz and Fred Mericle  each  claimed some articles as their property ; and such articles were not sold.   All the prop-

erty mentioned in the bond was sold except that claimed as exempt by Green and that claimed by third parties.

On the 7th day of April, 1880, Adler & Roedelheim brought an action of debt in the municipal court of Wheeling upon both bonds declaring upon each in the usual form in separate counts. The defendants demurred to the declaration and to each count; but the court overruled the demurrer. The defendants then filed pleas of condition performed, *nil debet*, and two special pleas in writing, which were in substance pleas of conditions performed. They also tendered a number of special pleas in writing, which were rejected by the court. On the 20th day of December, 1880, neither party desiring a jury, the court tried the case and rendered judgment for the plaintiffs against the defendants for the sum of $232.71 with interest from that day and the costs. The defendants moved the court to set aside its finding and judgment and grant them a new trial, on the ground that the judgment was contrary to the law and the evidence. The court overruled the motion, and the defendants excepted.

The bill of exceptions sets forth all the evidence; but it is not necessary to include it in this statement, as it is sufficiently set forth in the opinion of the Court. The defendants applied for and obtained a writ of error and *supersedeas* to said judgment.

*Robert White* for plaintiffs in error cited the following authorities: Acts 1872–3, ch. 101, §§ 1, 2, 3; Code, ch. 41, § 20; 11 W. Va. 253; Code, ch. 41, § 12; 12 W. Va. 713; 4 Rand. 177; 1 Wash. 259; 6 Munf. 32; 1 Rand. 211; 4 Munf. 380; 2 H. & M. 102; 14 W. Va. 50; 1 Gilm. 138; 1 Call 22; Barton Pr. 244, 261; 1 Rob. (old) Pr. 366; 1 H. & M. 382; Code, ch. 131, § 16; 1 Wash. 92; 2 Munf. 153; 3 Munf. 454; 8 Gratt. 179; 4 Min. Inst. pt. I. pp. 829, 830; 1 Rob. (old) Pr. 591 *et seq.*; *Id.* 528; 1 Munf. 269; 16 Johns. 288; 2 Tuck. Com. 67; 2 Tidd P. 1013; 1 Ld. Raym. 725; 21 Gratt. 500; 13 Gratt. 40; 2 Wash. 189; 1 Wash. 254; 1 Wash. 69; *Id.* 161.

*Henry M. Russell,* for defendants in error cited the following authorities: 3 Rand. 554; 1 Rev. Code Va. (1819) p.

530, § 16; 1 Wash. 69; *Id.* 161; 13 W. Va. 392; 9 W. Va. 373; 11 W. Va. 261; 7 Ired. L. 337; 15 W. Va. 290; 1 Wash. 330; 1 Rob. (old) Pr. 596; 11 W. Va. 535; 1 H. & M. 180; Brandt Suret. & Guar. § 405 and cases cited; 4 Min. Inst. pt. I, p. 830 and cases cited; 1 Rob. (old) Pr. 595, 596 and cases cited; 1 Wash. 273; 3 Rand. 522; Acts 1872-3 ch. 101 §§ 3, 5; 8 Gratt. 211; 1 Wash. 92; 11 Gratt. 522; 3 W. Va. 260.

Patton, Judge, announced the opinion of the Court:

In my view of this case it is not necessary to consider, whether the court below properly overruled the demurrer to the declaration, nor whether it erred in rejecting the special pleas in writing tendered by the defendants. The real issue in the case is, whether the property levied on, to retain the possession of which the forthcoming bonds in this case were executed, was in fact forthcoming and delivered to the officer on the day of sale or on the day on which by the terms of the second bond it was to be delivered. ·

It is claimed by the counsel for the defendants in error, that the sergeant's return upon those bonds is conclusive, and he cites in support of that position *Bowyer* v. *Knapp & Martin,* 15 W. Va. 277. The only point decided in that case on this subject was, that the return of a sheriff on a notice to take depositions is not conclusive but only *prima facie,* drawing the obvious distinction between the return of a sheriff upon process emanating from a court or its officer and a return upon a notice directed by one party to another, and which the law makes it the duty of the sheriff to serve. I have carefully examined all the authorities referred to by Johnson, Judge, in delivering the opinion of the court in that case, and I do not find one, which does not confine the doctrine of the conclusiveness of the sheriff's return to those returns made upon process emanating from a court or its officer or upon the mandate of a court. A forthcoming bond is neither the one nor the other; and I can see no good reason, why the sheriff's return upon such a bond may not be contradicted. It would seem to me to be an anomaly in the law, if in an action upon a bond with collateral condition the obligors could not plead and prove conditions performed, the very issue to be tried in

the case, because a sheriff had returned, that the condition was broken.

But this is no longer an open question with us. The uniform practice in Virginia has been to contradict the sheriff's return of "forfeited" upon forthcoming bonds, as illustrated in a number of cases in the Virginia reports, without even a suggestion being made in any of those cases, that the sheriff's return was conclusive of the forfeiture. *McKinster* v. *Garratt*, 3 Rand. 554; *Bernard* v. *Scott's Adm'r*, 3 Rand. 522; *Pleasants* v. *Lewis*, 1 Wash. 273; *Nicholas* v. *Fletcher*, 1 Wash. 330; *Bark* v. *Levy's ex'r.*, 1 Rand. 1; *Jones* v. *Raines*, 4 Rand. 386; *Cole* v. *Fenwick*, 1 Gilm. 134. I am of opinion therefore, that a sheriff's return upon a forthcoming bond is not conclusive but only *prima facie*.

When the day of sale mentioned in the first bond arrived, to wit: the 9th of August, 1879, the property was not sold for the want of bidders; and the same parties gave a new bond for the forthcoming of the property. The sergeant is estopped from denying, that the property mentioned in the first bond was not delivered up in performance of the condition of the bond. He could have taken the second bond, only upon the ground that the property was in his possession, having been delivered up to him. If it had not been delivered up and was not in his possession, the bond was forfeited, the obligors were liable upon it, the *fi. fa.* was satisfied, and the sergeant would have had no more interest in the property than a stranger. The taking of the second bond must be regarded as conclusive of the forthcoming and delivery of the property on the 9th of August, and of the performance of the condition of the bond. I am therefore of opinion, that the plea of conditions performed as to that bond was sustained.

It is claimed by the counsel for the plaintiff in error, that the sergeant had no right to take the second bond; that the statute (Acts 1872-3) only authorizes the taking of one bond. I do not so construe the statute. The object of the bond is to secure the forthcoming of the property on the day of sale and its preservation without cost in the meantime. When the day of sale arrives, and the property is delivered up, if the sale has to be postponed for the want of bidders, as in this case, or for any other good and sufficient reasons, what is to become of

the property until another day of sale can be fixed? It is evidently in the condition it was when first levied on. The officer by virtue of the levy is in possession. He must hold that possession and deprive the owner of it until the day of sale, or put it in the care of some one, who will have it forthcoming on the day of sale. It is the very condition of things contemplated by the statute, where it provides that a forthcoming bond may be taken, the lien of *fi. fa.* is not lost by the taking of the first bond. That lien only ceases when a delivery bond is given and *forfeited;* but if the property is delivered up to the officer, and the condition of the bond is performed, the sheriff has over it all the rights he originally had, when he made the levy, and the execution-debtor must have the same privileges, which he originally had. I think therefore, that the sergeant had the right to take a second bond under the statute.

But it is claimed, that the second bond is not a statutory bond for the additional reason, that the day fixed for the delivery of the property is different from the day fixed for the sale. The delivery by the terms of the bond was to be on the 18th; and the day fixed for the sale was on the 19th. I think this would have been a good objection, if the bond had been proceeded on by motion under the statute. *Ewin* v. *Eldridge,* 1 Wash. 161. But it is proceeded on as a common law bond. It has been repeatedly held, that a forthcoming bond being voluntary and not against public policy, though not a good statutory bond, may be a good bond at common law. This subject is fully discussed by Green, Judge, in *Porter* v. *Daniel,* 11 West Va. 253, *vide* also Brandt on Sur. and Guar. § 405. I see nothing in this particular bond to take it out of the general rule. I do not think, that treating it as a common law bond the day of delivery being different from the day of sale affects it in the slightest degree. Being a common law bond voluntarily given and for a valuable consideration, the parties had a right to make such stipulation as to the delivery and sale, as they thought proper.

The material question in this case is: Was the plea of conditions performed as to this last bond sustained? On the trial of the case the plaintiffs introduced the deputy sergeant, who made the levy took the bond and sold that portion of the

property which was sold. He testified, that the endorsements on the bonds correctly set forth the facts; that the exemption-papers were filed with him after August 6, 1879; that Green told him on the day of sale, he thinks, that some articles belonged to other parties; that the articles named in the exemption-papers were not sold, because of those papers; that nothing was said about the exemption on the day of sale; that the property levied on was all at the place of sale, and all of it was sold except what was claimed as exempt and what was claimed by other parties; that Green did not interfere or prevent the sale of any of the property levied on, but claimed he had no right to sell the property exempt and that which was claimed by other parties; that the sale was postponed from the 9th of August to the 19th for the want of bidders; that no exemption-papers were filed with him after the second bond was given.

Joseph Green testified, that the property was all on the premises at 1147 Market street on the 9th of August. He says: "I went over in the morning of that day to the City Building and delivered the property to the sergeant, and he sent a deputy over to take charge of it. The property was also forthcoming at the place of sale on the 18th of August. The only delivery made on August 9th was to come to the sergeant's office and tell him to come over and get the goods without specifying what goods. * * * * * The sergeant postponed the sale ten days. I then gave the second forthcoming bond, and had the property forthcoming on the 18th day of August, 1879, and delivered it on the morning of that day to the sergeant in the same way, that I delivered it on the 9th, by going to him and telling him the goods were there. He told me the sale was the next day. · The next day the property was on the premises, as it was when levied on, and the sergeant came there and sold a portion of it and left unsold what was claimed as exempt and what belonged to other parties."

Fritz Yarling testified: "I was at Green's at the time of the sale of his property. Officers Sweeney, Miller, Davis and McCully were present and took possession of the property. The sale was made in the different rooms of the house, where the property was situated. The property was all in the house;

and the officers went around from one room to another and sold everything, except what was mentioned in the exemption-papers, and what other parties claimed. When the officers came to an article named in the exemption-papers, they would pass it, and when any article was claimed by another person than Green, it was passed."

John Franz testified that he was present, and that he and his sister claimed some articles, and they were not sold. Fred. Mericle, who also claimed some articles, says: "I made this claim to the officers, and the property was not sold."

I have stated all the evidence bearing upon the question of the delivery of the property. It is claimed by the counsel for the defendants in error, that as this case was tried by the court in lieu of a jury, the evidence of the plaintiffs is to be taken as true, and the evidence of the defendants is to be disregarded, where they conflict. *Nutter* v. *Sydenstricker*, 11 W. Va. 535. I do not see, that there is any conflict in the testimony. The deputy-sergeant admits, that the property was all at the place of sale; that Green did not interfere to prevent the sale of any of the property levied on, "but claimed we had no right to sell the property exempt, and what was claimed by others." The evidence of the other witnesses does not contradict the testimony of the deputy-sergeant, but adds to and explains it. He could have denied their evidence, but he did not. The sergeant himself and others (presumably his deputies) besides McCully were present and do not testify or deny the evidence of Green, Franz Yarling or Mericle. While the deputy, McCully, says the returns on the bonds are true, he proceeds to give evidence inconsistent with those returns, which instead of being in conflict with the evidence of the defendants is in accord with it. This bond however not being a good statutory bond but a good common law bond, the sergeant's return of forfeiture thereon is not even *prima facie* evidence of its truth.

It might be sufficient to say, that the condition of the bond is, that the property should be delivered on the 18th of August, and that on that day Green went to the sergeant's office and told him the property was at the place of sale, and the sergeant did not go there to receive it, but simply replied, that the sale was next day. Now if the property was forthcoming

at the time of sale on the day mentioned in the bond for its delivery, and the sergeant after being notified of the fact did not go there to receive it, this was such a forthcoming and delivery of the property, as satisfied the condition of the bond. Green had done all, that by the condition of the bond he had bound himself to do, and more by notifying the officer, that the property was there. But it seems to me, that the delivery of the property on the next day was even more complete. The property consisting almost entirely of household furniture and ornaments in different rooms of the house, the sergeant went into the different rooms and sold such property, as was not mentioned in the exemption-papers, or claimed by others. He had the property all before him and passed each article claimed as exempt and by other persons, as he came to it.

Yarling says the sergeant took possession of all the property. The sergeant no where denies that he did. In his return he says, that Green refused to deliver the property *for sale*. Whether he used those words to indicate, that while there might have been a delivery of the property, in order that the exemption might be claimed and to give third parties an opportunity to assert their claims, there was no delivery with the purpose or expectation, that those articles would be sold ; or whether those words were inadvertently used, and the real intention of the return was to deny a delivery at all, I cannot tell. That they were used in the first sense may be fairly inferred from the fact, that when the sergeant gave his testimony, he asserted that the returns correctly set forth the facts. This is all he says in his examination in chief; but when the defendants had concluded their testimony, the plaintiffs recalled the sergeant, and he gave the further testimony I have already in substance repeated. He thus had a full opportunity to deny the testimony given by Yarling, that he took possession of the property, and the testimony of Mericle, that he applied to the officer as the party having charge of the property on that day to obtain such of it as he claimed ; but on the contrary on his re-examination he, I think, substantially confirms all, that these witnesses testified to including Green. I cannot well see how the delivery could have been more complete under the circumstances.

The object of the forthcoming bond is to place the officer on the day of sale in that attitude towards the property, that he occupied, when he levied upon it, to have it forthcoming on the day and place of sale, to place it in the power and presence of the officer to be dealt with by him, as the law directs. The property was in his presence and in his power. It was recognized by those present as in his possession, and the parties claiming some of it applied to him and not to Green for its release. The sergeant says he did not sell, because of the exemption-papers and the claims of third parties, but not that he did not sell, because the property was not delivered to him and was not in his possession and power. If Green did not deliver up the property, and intend to do so, and if the officer did not so understand, the bond was forfeited, and the property was Green's absolutely and without any claim whatever upon it in favor of the sergeant.

It is obvious to me from the anxiety Green displayed on the 9th of August, when he sought the sergeant and informed him, that the property was at the place of sale, and when on the 18th day of August he went again to the sergeant and informed him of the presence of the property at the place of sale, and from the fact, as stated by the sergeant, that on the 19th at the place of sale in the presence of the property, when it was in his power, "Green did not interfere or prevent the sale of any of the property levied on, but claimed we had no right to sell the property exempt," that Green's purpose was to deliver the property to the sergeant and rely as to the exemption and the rights of third parties upon the law, after he had discharged the obligation of the bond. I am therefore of opinion, that in performance of the condition of the second bond the property therein mentioned was forthcoming and delivered, and that the plea as to the second count of the declaration of conditions performed was sustained.

It is claimed by counsel for defendants in error, that the obligors in a forthcoming bond cannot dispute the title of the execution-debtor to the property levied on. This is true. *Syme* v. *Montague*, 4 H. & M. 180; Brandt. on Sur. and Guar. The property must be first delivered and the obligation of the bond discharged, the property then being restored to the sheriff or other officer holding the execution, all lia-

bility upon the bond ceases, the sheriff or other officer then holds the property by virtue of the levy, and he must dispose of it at his peril. Suppose no bond had been given, (the property being restored to the officer in discharge of the bond places him towards the property as if no bond had been given) and suppose claims are asserted against the property, as by third parties asserting title to the property, or by the execution-debtor himself resisting a sale upon alleged legal grounds, the sheriff must act at his peril. *Cole* v. *Fenwick,* Gilm. 134. If he gives notice to the execution-creditor and demands an indemnifying bond or pursues such other course as the law warrants, he will be released from liability; but if he chooses to determine those questions for himself and disposes of the property otherwise than as the law points out, he does so at his peril.

I do not consider it necessary to determine at what stage of the proceedings the execution-debtor under the statute may claim his right to $200.00 worth of property as exempt, nor whether the sergeant properly released to the third parties the property claimed by them.

On the whole I am of opinion that the judgment of the lower court should, be reversed with costs to the plaintiff in error, and judgment be rendered for the defendant in the court below.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.