# Wytheville.

## MARYLAND CASUALTY COMPANY v. E. T. PARRISH.

### June 14, 1928.

Argued and submitted before Judge Holt took his seat.

1. ATTACHMENT AND GARNISHMENT—*Jurisdiction of Court to Enter Personal Judgment Against Defendant—Attachment Dismissed.*—Under section 6404 of the Code of 1919, where the defendant in attachment was properly before the court, the court undoubtedly had jurisdiction to enter a personal judgment against the defendant, even though the attachment was dismissed.

2. ATTACHMENT AND GARNISHMENT—*Affidavit of Substantial Defense—Bond to Prosecute Attachment with Diligence—Section 6385 of the Code of 1919 is Mandatory—Ipso Facto.*—Section 6385 of the Code of 1919 provides that if in attachment defendant files an affidavit that he has a substantial defense, "the attachment shall stand dismissed *ipso facto*, unless" within ten days from the service of notice upon the plaintiff, plaintiff enters into bond, in a penalty of at least double the amount of his claim, that he will prosecute the attachment with diligence. This statute is mandatory that if the bond provided for therein to prosecute the attachment with diligence and to pay all costs and damages which might be awarded against the plaintiff, or sustained by the defendant, is not given within ten days of the service of notice upon the plaintiff, the attachment stands dismissed *ipso facto;* that is, without an affirmative action of the court.

3. ATTACHMENT AND GARNISHMENT—*Bond Given in Pursuance of Section 6394 of the Code of 1919—Effect of Dismissal of Attachment on Bond.*—If a bond was given by the defendant in attachment in pursuance of section 6394 of the Code of 1919, conditioned to have the property forthcoming at such time and place as the court may require, or with condition to perform the judgment of the court, there is no question but that the bond loses its vitality when the attachment is dismissed.

4. ATTACHMENT AND GARNISHMENT—*Forthcoming and Delivery Bond— Whether Bond was Given in Pursuance of Section 6394 of the Code of 1919 or Whether the Bond was a Common-Law Bond—Case at Bar.*—In the instant case appellant was surety upon a bond given by the defend-

ant in attachment in order that defendant in attachment might retain possession and control of the property attached free of the lien of attachment. The attachment was dismissed *ipso facto* because of the failure of the plaintiff to file the bond required by section 6385 of the Code of 1919, to prosecute the attachment with diligence, and appellant contended that the bond lost its vitality with the attachment. This was practically conceded by counsel for appellee, if the bond was a statutory bond, who contended, however, that the bond was not a statutory forthcoming bond, under section 6394 of the Code of 1919, but a common-law (release) bond. The bond concluded with the expression: Whereas the defendants "are desirous of releasing the said property attached as aforesaid," and immediately thereafter was the following language: "Now, therefore, if the said property above described and attached as herein set out shall be forthcoming at such time and place as the court in the cause aforesaid may require, then this obligation shall be void; otherwise it shall be and remain in full force and virtue."

*Held:* That the bond in the instant case was strictly a statutory bond under section 6394 of the Code of 1919. When the attachment was dismissed the bond became inoperative and of no effect, and the surety was no longer liable to appellee.

5. Attachment and Garnishment—*Forthcoming and Delivery Bond—Effect of Dismissal of Attachment Upon Bond—Section 6406 of the Code of 1919.*—Section 6406 of the Code of 1919, which gives the court the power, where it would otherwise have jurisdiction of the action against the defendant, and the defendant has appeared generally or been served with process, to retain the cause and proceed to final judgment, certainly does not extend the life of the attachment, or the attachment (forthcoming) bond, where the attachment is *ipso facto* dismissed by failure of plaintiff to give the bond required in section 6385 of the Code of 1919, upon defendant filing an affidavit of substantial defense. On the contrary, the power of the court to act under this section presupposes the prior death of the attachment and the bond, as there would be no necessity for proceeding to final judgment against the defendant independently of the attachment if the attachment was still alive and the bond was still in force.

Error to a judgment of the Circuit Court of Goochland county, in a proceeding by motion for a judgment for money. Judgment for Plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*S. L. Sinnott* and *John G. May, Jr.,* for the plaintiff in error.

*Bethel & Williams* and *Leake & Spicer,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

The writ of error awarded in these proceedings brings before this court for review a judgment of the Circuit Court of Goochland county, Virginia, in an action at law in which E. T. Parrish was plaintiff, and is hereafter referred to as plaintiff, and the Maryland Casualty Company, a foreign corporation, was defendant, hereinafter referred to as defendant or the Casualty Company. The judgment was rendered on the 11th day of November, 1926.

The plaintiff claimed damages of $20,000.00, to be discharged by the payment of $5,000.00 with interest thereon from the —— day of June, 1923, until paid, and costs, on account of a surety bond executed by the Casualty Company for the Ryland and Brook Lumber Company. As between the plaintiff and the Casualty Company there was no question of disputed fact, a jury was waived, and the question of law submitted to the court for decision. The court decided the law question adversely to the Casualty Company and there being no further defense, judgment was rendered against it in the sum of $20,000.00 to be discharged by the payment of $5,000.00 as heretofore stated.

A brief summary of the essential facts is, that on February 21, 1920, E. T. Parrish (plaintiff) was working at the lathe mill of Ryland and Brooks Lumber Company in Goochland county, and while so working he had his right hand cut off. Several months later he

instituted suit against the Ryland and Brooks Lumber Company, which was a foreign corporation, by way of attachment. The attachment was levied on property belonging to Ryland and Brooks Lumber Company in Goochland county, but as no bond was given by the plaintiff in suing out his attachment the sheriff did not take possession of the property and it was therefore subject only to the lien of the attachment pursuant to section 6393 of the Code. The Ryland and Brooks Lumber Company, in order to have or retain possession and control of the property free of the lien, executed a forthcoming bond under the first clause of section 6394 of the Code with condition "if the said property above described and attached, as herein set out, shall be forthcoming at such time and place as the court in the cause aforesaid may require, then this obligation shall be void, otherwise, it shall be, and remain, in full force and virtue." The Casualty Company signed this forthcoming bond as surety on August 19, 1920, the case was continued from that date until November, 1922, chiefly on dilatory pleas filed by Ryland and Brooks Lumber Company.

On the 11th day of November, 1922, the Ryland and Brooks Lumber Company made an affidavit of substantial defense to the merits of the plaintiff's claim. This affidavit was made under section 6385 of the Code of Virginia 1919 (marginal note I), and is in conformity with the provisions of that statute. The plaintiff was served with notice of the filing of the affidavit on the

I. "If a principal defendant shall file in the clerk's office of the court to which the attachment is returnable an affidavit of himself, his agent or attorney, that he has a substantial defense to the merits of the plaintiff's claim, it shall be the duty of the clerk forthwith to notify the plaintiff, his agent or attorney, of that fact, and the attachment shall stand dismissed *ipso facto* unless within ten days from the service of such notice the plaintiff, or someone for him, shall enter into bond with security approved

17th day of November, 1922, but neither the plaintiff nor anyone for him has at any time entered into a bond as required by this section of the Code.

The case was then continued on the docket from November, 1922, until June, 1923, on various dilatory questions raised by the Ryland and Brooks Lumber Company, and on the 16th day of that month the cause was tried and a jury found a verdict in favor of the plaintiff against the Ryland and Brooks Lumber Company in the sum of $5,000.00 and the court rendered judgment thereon on the 26th day of April, 1924, which was a year and a half after the affidavit of substantial defense, above referred to, was filed.

The plaintiff failing, or being unable to collect on his judgment, instituted action on the 26th day of September, 1925, against the Maryland Casualty Company as surety on the forthcoming bond heretofore referred to. To this notice of motion the defendant filed a special plea, the purport of which was: That the Ryland and Brooks Lumber Company, in the action of E. T. Parrish against it, had made affidavit that it had a substantial defense to the merits of the plaintiff's claim, and that such affidavit was otherwise in conformity with section 6385 of the Code of Virginia, 1919, as aforesaid, and that when such affidavit was filed by the defendant, it then became the duty of the plaintiff, or someone for him, to enter into a bond in a penalty of at least double the amount sued for, conditioned that the plaintiff would prosecute his attachment with diligence, and the obligors would pay all costs and damages which might be awarded against the plaintiff, or sus-

by such clerk, in a penalty of at least double the amount of the claim sworn to or sued for, with condition that the plaintiff will prosecute his attachment with diligence, and that the obligors will pay all costs and damages which may be awarded against the plaintiff, or sustained by the said defendant, or any other person, by reason of suing out the attachment."

tained by the defendant; that no such bond had been entered into by the plaintiff as required by said section 6385 of the Code of Virginia, 1919, and that such section provided, unless the bond was entered into by the plaintiff, that the attachment should stand *ipso facto* dismissed within ten days after the plaintiff had received notice of the affidavit; that said bond required of the plaintiff had not been entered into within ten days, nor had it ever been entered into.

The plaintiff moved to strike out this special plea, which had the effect of admitting the truth of the facts alleged therein, and the motion to strike out the special plea was sustained. Exception was duly taken to the action of the court in striking out the special plea and this exception presents the only assignment of error and question for consideration by this court.

The real question in the case is: Whether the forthcoming bond entered into by the Ryland and Brooks Lumber Company and the Casualty Company as surety was in force at the time of the rendition of the judgment against the Casualty Company.

[1] Under section 6404 of the Code of 1919 (which appears in the margin II), the Ryland and Brooks Lumber Company being properly before the court, the court undoubtedly had jurisdiction to enter a personal judgment against it, even though the attachment was dismissed

[2] The court held that the attachment was dis-

II. "If the principal defendant has not appeared generally, nor been served with process, and the sole ground of jurisdiction of the court is the right to sue out the attachment, and this right be decided against the petitioner, the petition shall be dismissed at the costs of the petitioner; but if the plaintiff's claim be due at the hearing, and the court would otherwise have jurisdiction of an action against such defendant for the cause set forth in the petition, and said defendant has appeared generally, or been served with process, it shall retain the cause and proceed to final judgment in like manner as if it had been a motion matured for hearing under section six thousand and forty-six."

missed, and we think properly so held. The statute, 6385, is mandatory that if the bond provided for therein to prosecute the attachment with diligence and to pay all costs and damages which might be awarded against the plaintiff, or sustained by the defendant, is not given within ten days of the service of such notice, the attachment shall stand dismissed *ipso facto.*

The statute does not require construction. Its terms are plain and can have but one meaning. The term *ipso facto* has had frequent construction by this court and it is only necessary to make reference to some of the cases construing it. See *Childrey* v. *Rady*, 77 Va. 518; *Owens* v. *Owens*, 78 Va. 116; *Vaughan* v. *Johnson*, 77 Va. 300. See also *State* v. *Lansing*, 46 Neb. 514, 64 N. W. 1104, 35 L. R. A. 124; *Barber* v. *Haywood*, 248 Mo. 280, 154 S. W. 140.

There can be no question therefore as to what becomes of the attachment in case of a failure to give the bond required of a plaintiff by section 6385, when the defendant has filed an affidavit of substantial defense and has complied with its other provisions as the Ryland and Brooks Lumber Company did in this case. It stands *"ipso facto"* dismissed, that is without any affirmative action of the court. The only question is, did the bond, in this particular case, upon which the defendant became surety, survive the dismissal of the attachment, so as to permit the court to enter a judgment against the Casualty Company.

[3, 4] If the bond was given in pursuance to section 6394 (marginal note III) there is no question but that the bond lost its vitality with the attachment. This

III. "Any property levied on or seized as aforesaid, under any attachment, may be retained by or returned to the defendant or other person, in whose possession it was, on his giving bond, with condition to have the same forthcoming at such time and place as the court may require; or the principal defendant may, by giving bond with condition to perform the

is practically conceded by counsel for plaintiff who contends that the bond in this case is not a statutory forthcoming bond but a common-law (release) bond.

We cannot concur in this view. It is true the bond concluded with the expression: "Whereas the said Ryland and Brooks Lumber Company are desirous of releasing the said property attached as aforesaid, this is but the effect of the execution of the bond which concluded immediately thereafter: "Now, therefore, if the said property above described and attached as herein set out shall be forthcoming at such time and place as the court in the cause aforesaid may require, then this obligation shall be void; otherwise it shall be and remain in full force and virtue."

Section 6394 of the Code provides for the giving of just such a bond to have the property forthcoming at such time and place as the court may require or to release from any attachment the whole of the estate attached. In other words, the defendant in an attachment proceeding, whose property has been attached, under section 6394, independently of whether the plaintiff has given bond in order that the sheriff may take possession of the property or not, may *retain* possession of the property or have the possession of the property returned to him, by giving bond to have such property forthcoming as required by the statute, or under the provisions of the same section, the defendant may give bond with condition to perform the judgment of the court and have released from the attachment the whole of the estate attached.

In the instant case the defendant gave bond under the

judgment of the court, release from any attachment the whole of the estate attached. The bond in either case shall be taken by the officer serving the attachment, with surety, payable to the plaintiff, and in a penalty, in the latter case, at least double the amount or value for which the attachment issued, and in the former, either double the same or double the value of the property retained or returned, at the option of the person giving it."

first provision of section 6394, the effect of which was, of course, to release the property from the lien of the attachment upon condition, exactly as provided by the bond in the instant case, to have the property forthcoming at such time and place as the court may require.

It is very clear that the bond in the instant case was strictly a statutory bond and if so there can be no question but that when the attachment was dismissed the bond became inoperative and of no effect. The bond had vitality only as long as the attachment was alive and when the attachment was dismissed the bond went with the attachment. Whatever destroyed the attachment would destroy the bond, as it stood in the place of the property attached. See Burks Pleading and Practice, 2d. ed. 691.

In 6 C. J. 464, this is said: "A dissolution of an attachment is a final adjudication of all questions arising in the attachment proceedings, unless an appeal therefrom is taken in due time, and as regards the property attached, the parties are put in the same position as if no attachment had issued. The effect of the dissolution of an attachment is to release the attached property, although no order of dissolution is entered in the court where the action is pending."

And again, 6 C. J. page 466: "Where an attachment is dissolved, the lien on the property siezed thereunder is vacated, and if by judicial sale, a fund has been substituted in place of the property, the lien on the fund is thereby discharged."

In *Hilton & Allen* v. *Consumers' Can Co.*, 103 Va. 255, 48 S. E. 899, the defendant executed a release attachment bond, the condition to perform the judgment of the court. The attachment was later declared void. The court held: "If the judgment of the court had been to sustain the attachment, then the bond stood as

a security in lieu of the property upon which the attachment had been levied. But the court abated the attachment, the very groundwork of the whole proceeding, and with it the bond fell and became of no effect."

In 6 C. J. 468, it is said: "Where an attachment is vacated, or quashed, a forthcoming delivery, or replevy, bond, given to secure the release of the property, falls with it. Likewise, the dissolution of an attachment releases a deposit of money payable to the depositor on demand."

In *Shunack* v. *Metal Novelty Co.* (1911), 84 Conn. 331, 335, 80 Atl. 290, at page 292, the court said: "As the lien of the attachment remains in legal contemplation over the property through the bond, or over the bond, as representing the property, it follows naturally that whatever destroys the attachment, destroys all liability upon the bond."

[5] Section 6406, which gives the court the power, where it would otherwise have jurisdiction of the action against the defendant, and the defendant has appeared generally or been served with process, to retain the cause and proceed to final judgment, certainly does not extend the life of the attachment, or the attachment (forthcoming) bond. On the contrary, the power of the court to act under this section presupposes the prior death of the attachment and the bond, as there would be no necessity for proceeding to final judgment against the defendant independently of the attachment if the attachment was still alive and the bond was still in force. In such a case it would only be necessary to proceed to a sale under the attachment or under the forthcoming bond if the property had theretofore been removed.

We are of opinion, therefore, that when the attach-

ment was dismissed the bond was dismissed also, as it had life only because it was a part of the attachment, and that the court erred in entering judgment against the Casualty Company.

In view of this, this court will enter a judgment for the Casualty Company and dismissing the suit against it.

*Reversed.*

PRENTIS, P., dissenting:

I differ with the majority of the court in their conclusions in this case, and think the question is of such importance that I ought to give some expression to my views.

1. I agree with the learned trial judge, and think the judgment should be affirmed. The title of section 6394 shows that it is intended to offer distinct alternative methods open to a defendant whose property has been attached. The title is: "How any property seized under attachment restored; how the whole released; what bond to be given." If the defendant simply desires the property siezed under the attachment to be restored to him, or to some other person in whose possession it has been, he should give a bond reciting the fact that he so desires. In that event the condition of such a bond is to have the property "forthcoming at such time and place as the court may require." On the other hand, if he desires to have the property absolutely released from the lien of the attachment, the condition of the bond must be, "with condition to perform the judgment of the court." That these distinct alternatives are presented is expressed in the section by the provision for the filing of the bond "in either case." The bond here involved does not fully meet either of these alternatives, but refers to both; that is, it recites that "the Ryland and Brooks Lumber Company is

desirous of releasing the said property attached as aforesaid," but the condition of the bond is not appropriate for the release of such property, for it is that it "shall be forthcoming at such time and place as the court may require." The only condition upon which the defendant could have secured the release of the property pursuant to the statute was by giving a bond with condition to perform the judgment of the court. The bond here, however, is with condition to have the property forthcoming, and so is not a release of the attachment under the statute, because it is perfectly clear from the statute that only in case the defendant gives a bond to perform the judgment of the court should the property itself be released.

In this case, the bond recites that such release was desired, and it was treated by both parties as a release of the property, for in addition to the recital of its purpose it is shown that it was immediately released by the officer to the defendant in the attachment, The Ryland and Brooks Lumber Company, who sold it and took the proceeds. I think, therefore, that the bond should be construed to be a common-law bond, by which the defendant, not according to but against the statute, secured from the officer the absolute release of the property, and hence that the Maryland Casualty Company is liable in this proceeding for the breach of its condition.

2. I realize that by some this may be conceived to be a literal construction of the statute which is too narrow, but even if the bond be construed to accord with the statute, this does not change my view as to the proper conclusions in this case.

Adverting then to section 6385, which is relied on to support the reversal of the case, we observe that it immediately follows section 6384 providing for the

bond which the plaintiff is required to give if the officer is required to take actual possession of the property. Section 6385 applies primarily for the protection of the defendant when the plaintiff has not previously given any bond under section 6384. It in substance provides that if the principal defendant file an affidavit that he has a substantial defense on the merits, then upon proper notice to the plaintiff the attachment shall stand dismissed, *ipso facto*, unless within ten days thereafter the plaintiff, or some one for him, shall enter into a bond in a penalty of at least double the amount of the claim sworn to, or sued for, with condition to prosecute his attachment and pay all costs and damages which may be adjudged against him. The note of the revisors to this section reads: "This section is new, and is intended to cover the case where no bond was given under the preceding section, but the property of the defendant was levied on, though not taken possession of, and he has a substantial defense to the merits. In such case it was thought that the plaintiff ought not to be allowed to tie up the property of the defendant without giving bond to cover the resulting damages." Observe the expressed purpose of the section, and that it was intended to prevent a hardship upon the defendant. It was not designed then to impose an unnecessary burden on the plaintiff. The thought of the revisors in preparing the section was fixed upon cases in which no bond had been given by the plaintiff under the preceding section. I think that if at that time their minds had been directed to section 6394, referring to bonds to be given by defendants, it would have been equally evident to them that the section should not be made to apply in case the defendant himself had already relieved himself of all the hardship created by the attachment,

either by giving a forthcoming bond, or a release bond. Certainly when, as in this case, the defendant has already given a bond and resumed possession and ownership of his property under section 6394, he is suffering no hardship. All that he then has to do is to interpose his defense.

The construction which the court has in this case put upon the new section (6385), however, may impose a great hardship upon the plaintiff in an attachment. He may be unable to give a bond and this may be the reason he has not given a bond under section 6384. The new section requires him to give a bond of double the amount of his claim, and this, in many instances, may be for that particular plaintiff an impossibility, and yet, as construed by the court, this hardship is inevitably imposed in every case.

My judgment is that the three sections relating to attachment bonds should be construed together so as to meet the varying conditions. Both plaintiff and defendant have options, and logical consequences ensue from the exercise thereof. If the plaintiff wishes the officer to take possession of the property and imposes that hardship upon the defendant, he must give a bond under section 6384 to respond in costs and damages. If the defendant then wishes to have the property either restored to its former custody, or finally released, he gives a bond with appropriate condition under section 6394, all ultimate rights are thereby safeguarded, and the case proceeds. If, however, for any reason, the plaintiff has not given bond under section 6384 and the defendant has not given bond under section 6394, then the defendant may take advantage of section 6385. Not unless this is true, however, because if the plaintiff has already indemnified the defendant against damages and costs, there is no need

for another bond for the same purpose under 6385. If on the other hand the defendant has resumed possession of his property under section 6394 by having given the bond thereby required, he is suffering no hardship. It may be wise and in the interest of justice in cases where a plaintiff has given no bond under section 6384 and the defendant has given no bond under section 6394, to require a bond of the plaintiff at the instance of a defendant who has a substantial defense, under penalty of having his attachment dismissed. But why require such a bond of the plaintiff when the defendant is suffering no hardship because he has already discharged or released his property from the attachment by giving the bond under section 6394? There appears to be no need for such a requirement. As it seems to me, it imposes an unnecessary hardship upon the plaintiff without any corresponding benefit to the defendant, and construed as the majority have construed it in this case it operates harshly upon a plaintiff who is unable to give such a bond for double the amount of his claim. Such a construction then should be avoided, unless the statute is so clear as to be unavoidable.

As I understand from this record, such a construction imposes a harsh consequence upon this plaintiff. He has recovered a judgment on the merits, after a fair trial, for the loss of his hand, against an insolvent defendant. The attachment was properly levied and could not have been dissolved upon the merits. The only purpose of the bond on which the plaintiff in error is surety was to release the property to the insolvent defendant and make the surety responsible for the failure to produce it to satisfy the final judgment of the court in the original action. The reversal of this judgment relieves the surety of that obligation.

The cases relied on, to the effect that the dissolution of the attachment releases the bond, have not arisen under this new statute, section 6385, and are cases in which it had been determined that the attachment had been improperly sued out and levied. As I understand the facts of this case, this attachment was properly levied. The property levied on was released from the attachment only because of the bond which was given by the defendant, and it had been so released two years before the defendant filed his affidavit of substantial defense under section 6385. At the time that affidavit was filed there was no remaining issue or question for the court, except to determine the controversy on the merits. The defendant had already exercised his option and the affidavit came too late. If given the same effect as though filed before the bond here sued on had been executed, it contradicts and ignores the original bond, is inconsistent therewith and violates the contract therein contained. This contract is clear and contains no limitation whatever upon the liability thereby assumed. There is no Virginia case which denies this view. These expressions and cases are persuasive:

In *Guaranty Security Corporation* v. *Oppenheimer* (1923), 243 Mass. 324, 137 N. E. 644, it is said: "The attachment was dissolved by giving the bond. The lien acquired by the attachment was gone when the bond was delivered. The bond was not given for the property nor as security for its value. It was a new obligation."

In *Tapley* v. *Goodsell*, 122 Mass. 176, this is said: "A surety on a bond to dissolve an attachment does not stand upon the footing of a stranger to the action. The very purpose as well as the tenor of his obligation is to secure the payment of any judgment that may be re-

covered against his principal. The bond is not affected by contingencies which might have discharged the attachment if no bond had been given."

In construing a statute, it is held in *Easton* v. *Ormsby* (1893), 18 R. I. 309, 27 Atl. 216, that a bond conditioned either to pay such judgment as may be rendered or to redeliver the property, worked an absolute dissolution of the attachment lien, having been given and accepted as a new security in lieu of such lien, so that thereafter there was no room for the operation of another statute providing that the assignment by a debtor, after an attachment of his goods, should operate to dissolve such attachment, and that consequently the liability of the sureties on such bond remained unchanged by their principal's assignment. If this conclusion is correct, it is a precedent which, if followed, is decisive of this controversy.

In that State, under the statute there being construed, a general assignment of the debtor operated to dissolve attachments which had been levied within the preceding sixty days, and this appears in the opinion of the court: "The first question which logically presents itself for our consideration is this, viz: What was the effect upon said first attachment of the giving of said bond? Or, to be more specific, did the giving of said bond dissolve said attachment? If it did, then there was nothing for said assignment to act upon. But if it did not, then there was, and the making and recording thereof dissolved said attachment. Pub. Stat. R. I., chapter 207, section 16, provides that 'the defendant in any writ upon which goods and chattels shall have been attached may, at any time within forty-eight hours, exclusive of Sunday, after such attachment, deliver to such officer a bond in the penal sum of the amount of damages laid in the writ, signed

by the defendant, or some one in his behalf, with sureties to the satisfaction of such officer, with a condition therein that the same shall be null and void if the final judgment in the action in which such writ was served shall be forthwith paid and satisfied after the rendition thereof.' Section 20 of the same chapter provides that 'every officer having goods and chattels attached by him in his custody shall surrender the same at any time after such attachment and before final judgment to the person whose interest therein has been attached, or from whose possession they have been taken, upon being tendered a bond by the defendant, or some one in his behalf, with sufficient sureties to the satisfaction of such officer in double the value of the goods and chattels so attached, or in the penal sum of the amount of damages laid in said writ, with condition that such bond shall be null and void if at any time after final judgment in the action in which such attachment shall have been rendered, such goods and chattels shall, upon request therefor, be in as good order and condition as when surrendered, returned to the officer taking such bond, or to any officer who shall be charged with the service of an execution levied upon the judgment rendered in such action, unless such judgment shall have been paid, or shall be immediately paid, together with the costs upon such execution, upon the making of such request, or the return of such goods and chattels.'

"The principal difficulty which arises in regard to the solution of the question we have suggested, is that said bond contains two conditions, viz: *First*, a condition to pay the judgment which shall be recovered in the action, as provided in said section 16, and second, to return to the officer, upon request, the goods attached in as good order and condition as when sur-

rendered, in case final judgment is rendered in favor of the plaintiff, as provided in section 20. Either one of these conditions would, of course, have been sufficient. But the obligors, instead of making any election,. and giving either a bail bond, as they might have done by inserting the first condition only, or a delivery or forthcoming bond, by inserting the second condition only, have given one containing both of said conditions. That is, strictly speaking, the obligors have bound themselves both to pay the judgment and also to return the goods. But inasmuch as the conditions in a bond are to be taken most strongly in favor of the obligors, *Pearce* v. *Maguire*, 17 R. I. 61 [20 Atl. 98], we think these conditions should be construed as in the alternative, and hence that the bond may be satisfied by the performance of either. In order to better determine the effect of said bond upon the attachment, however, it may be useful first to ascertain whether it is a statutory or a common-law bond. We think it must be held to be a common-law bond. For, although it contains internal evidence of the intention of the obligors to make it a statutory bond, yet, as it does not conform to either of the provisions aforesaid, but embraces them both, thereby making a condition not contemplated by either, we do not think it can be held to be a statutory bond. Official bonds must conform to the statute by which they are authorized, and if they do not they are invalid altogether, or valid only as common-law bonds. Murfree on Official Bonds, section 41; *Adler & Roedelheim* v. *Green*, 18 W. Va. 201. This bond is clearly valid, however, as a common-law bond. It violates no statute and was made upon a valid and lawful consideration. *Central Mills* v. *Stewart*, 133 Mass. 461; *Palmer* v. *Vance*, 13 Cal. 553–556; *Smith* v. *Fargo*, 57 Cal. 157; *Bunneman* v.

*Wagner*, 16 Oregon 433 [18 Pac. 841, 8 Am. St. Rep. 306].

"Having determined the character and validity of said bond, then, we are next brought to the consideration of the effect thereof. And first, what was the evident purpose of the obligors in giving said bond? Clearly it was to release the goods from attachment, and thereby enable the owner thereof to go on with his business. That the obligors so interpreted and understood it is evident from the subsequent conduct of said defendant, Atwater, in proceeding to sell and dispose of said goods in the regular course of his business as aforesaid; and that the sheriff so understood it is also evident from his conduct in immediately surrendering said goods to the said Atwater.

"As was said by Durfee, C. J., in *Pearce* v. *Maguire*, *supra*: 'There must be many cases in which the purpose of procuring the surrender of the goods, understood on both sides, is that they may be used up or sold so that it will be impossible to return them.'

"We are forced to the conclusion, therefore, that the giving of said bond, coupled with the conduct of the parties in connection therewith, worked an absolute dissolution of said attachment and that such was the understanding and intention of the parties to said bond. In other words, said bond was given and accepted as a new security and was intended to and did take the place of the attachment lien. The officer was not compelled to surrender the goods on being tendered such a bond, it not being in compliance with the statute as aforesaid; but by surrendering them, and accepting said bond in lieu thereof as he did, he put it out of his power in any circumstances to compel their return to him, and thereby discharged his attachment thereon. Such surrender of the goods *ipso facto*

works a dissolution of the attachment and from that moment reinvests the defendant with the absolute control thereof. See *Pomroy* v. *Kingsley*, 1 Tyler (Vt.) 294.

"The obligors have not performed either of the conditions contained in said bond, but claim to be discharged therefrom by reason of the fact that the debtor, within sixty days after said attachment, made an assignment as aforesaid which dissolved said attachment, and that thereupon all liability of the said sheriff to the plaintiff in said original action, growing out of said attachment, immediately ceased.

"Whatever may have been the effect of said assignment upon the attachment in question, and incidentally also upon the rights of the obligors in said bond, if it had been given under the provisions of said section 20 of chapter 207, it is clear that it can have no effect in this case, as there being no attachment in existence for it to operate upon, the making thereof had no effect upon the rights of the plaintiff under said bond."

With due respect to my brethren, then, my opinion is that the bond did not comply with the statute (6394); that it was a common-law bond, an inviolable contract, and should be enforced as such against the surety. In addition thereto, I am of opinion that Code, section 6385, requiring a bond of the plaintiff within ten days after a defendant makes affidavit of a substantial defense, does not apply in a case where either the plaintiff has already given a bond requiring the officer to take possession of the property, under section 6384, or where the defendant, under section 6394, has previously given a bond with condition either to have the property forthcoming, or to perform the judgment of the court. This construction, as I think, accords with the entire statute, and makes all three sections effective,

whereas, in my opinion, the construction of the majority fails to give proper effect to section 6394 and to the contract of the surety, from which contract their conclusion relieves the surety.